## ROXANA PETROLEUM CORP. et al. v. HORNBERGER et al.

No. 21447. Opinion Filed June 16, 1931.

Rehearing Denied July 14, 1931.

Clayton B. Pierce and J. R. Moore, for the petitioners.

B. C. Trice, for respondent Peter A. Hornberger.

CULLISON, J. This is an original proceeding before the Supreme Court to review an award made by the State Industrial Commission on May 17, 1930, in favor of respondent Peter A. Hornberger. The record discloses that respondent was in the employ of petitioner, and while so employed, on September 14, 1927, he suffered an accidental injury resulting in fracture of the left arm. He was under medical attention for considerable time, and on February 27, 1929, a hearing was held on said claim before Commissioner L. B. Kyle in pursuance to notice theretofore given, and as a result of said hearing the State Industrial Commission made an award in said cause on March 4, 1929. All parties were present at the hearing, including respondent and his attorney, and the Commission made the following findings:

"Now, on this 4th day of March, 1929, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to hearing held at Enid, Okla., on February 27, 1929, before Commissioner L. B. Kyle to determine liability and extent of disability, at which hearing claimant appears in person and by his attorney, C. B. Trice, respondent and insurance carrier being represented by C. B. Pierce. * * *

"Finding No. 3.

"That, arising out of and in the course of his employment, claimant on September 14, 1927, sustained an accidental personal injury which resulted in the **permanent loss of 33 1-3 per cent. of the use of claimant's left arm.**

"Finding No. 4.

"That the average wage of claimant at the time of his injury was $125 per month.

"The Commission is of the opinion, on consideration of the foregoing facts, that claimant is entitled to compensation at the rate of $18 per week for a period of 83 weeks and 2 days.

"It is therefore ordered: That within ten days from this date respondent, Roxana Petroleum Corporation, or its insurance carrier, Aetna Life Insurance Company, pay to Peter A. Hornberger the sum of $1,500, same being 83 weeks and 2 days compensation at the rate of $18 per week, less any sum or sums heretofore paid as compensation in this case. * * *"

In accordance with the above award, respondent was paid the amount thereof and signed a receipt therefor.

The record next discloses that notice was given to all parties in said cause that a hearing would be held at Enid, Okla., on April 17, 1930, more than one year after the former hearing, to determine the extent of temporary total disability, and at said hearing all parties appeared before the Commissioner and the following proceedings were had:

"By Judge Doyle: You have a petition to reopen the case? By Mr. Trice: Only in form of a letter—I am willing to dictate the motion into the record now. By Judge Doyle: Go ahead. By Mr. Pierce: As I understand, he contends that the Commission was in error in making his award of March 4, 1929, and that he now seeks to have this case reopened to correct that award. By Judge Doyle: Well, I think he can. It is up to you gentlemen; I understand the Supreme Court passed on the matter; I have the decision. By Judge Doyle: Go ahead and offer your proof. By Mr. Trice: (Q.) State your name? By Mr. Pierce: To which the respondent and insurance carrier object and object to the introduction of any evidence for the reason that there was no motion or

application on the part of any person in the files and records of this case which authorizes or gives jurisdiction to this Commission to reopen this cause, under any grounds, or upon any reason authorized by the statute. By Mr. Trice: We sent the Commission a letter stating our case and asked the Commission to indicate whether or not a formal motion would be required; to that last letter we have no reply; we here and now move the court to reopen the case and reinstate it, and grant the relief prayed for. By Judge Doyle: State your reason. By Mr. Trice: For the reason that the formal award only allowed Mr. Hornberger compensation for permanent injury, the award was based on 33 1-3 per cent. for 85 weeks and two days; I believe same to be 83 weeks and two days, at the rate of $18 a week, on that basis, the Aetna Life Insurance Company to pay $1,500, less any sum or sums heretofore paid as compensation in this case. Now, your honor please, the evidence shows he had been receiving $18 a week at the time he was discharged by the physician and went back to the employer,—an amount was deducted out of this $1,500, which of course leaves him no compensation for the temporary **permanent** disability. By Judge Doyle: The disability extends further than this record—how much temporary total disability you are claiming? By Mr. Trice: The difference. By Judge Doyle: How long was the total disability? By Mr. Hornberger: I don't remember. By Mr. Pierce: Objection. By Judge Doyle: The objection will be overruled. Offer your proof. By Mr. Pierce: We demur to the sufficiency of claimant's motion to reopen, which has been dictated into the record, for the reason that the same does not state facts which would authorize this Commission to reopen under the provision of section 7290. By Judge Doyle: The demurrer will be overruled. Proceed. By Mr. Pierce: Exception."

Thereafter attorney for respondent herein introduced his evidence in support of respondent's contention for additional compensation, and at the close of said testimony, attorney for the petitioner made the following motion:

"We move to deny the motion for rehearing for the reason that no grounds have been shown to justify the Commission to reopen the case"

—which said motion was overruled and excepted to. The record also discloses the following motion to have been filed before the Commission (omitting the caption):

"Motion.

"And now on this 17th day of April, 1930, at the close of all the evidence in this cause, comes the claimant, Peter A. Hornberger, and prays your honorable State Industrial Commission for judgment, that he have and recover of and from respondent, Roxana Petro'eum Corporation, or its insurance carrier, Aetna Life Insurance Company, the sum of $864, same being 48 weeks compensation at the rate of $18 per week, for his temporary total disability, as provided for by law, and which was by order of said Commission wrongfully deducted from said claimant's award in the sum of $1,500, which is 83 weeks and 2 days compensation at the rate of $18 per week, for permanent partial disability of 33 1-3 per cent. of claimant's left arm growing out of said injury, and he will ever pray.

"Peter A. Hornberger, Claimant,

"by B. C. Trice, His Attorney."

And thereafter on the 17th day of May, 1930, the Commission rendered an award in pursuance of the hearing held on April 17, 1930, which said award contains the following findings (R. 85):

"Finding No. 4.

"That heretofore on the 4th day of March, 1929, the Commission made and entered an order allowing the claimant 33 1-3 per cent. permanent partial loss of the use of the left arm, or 83 weeks and 2 days compensation at the rate of $18 per week, in the sum of $1,500, which has heretofore been paid, but the Commission at that time failed to allow the claimant for his temporary total disability of 47 weeks and four days, as hereinbefore set out.

"Upon consideration of the foregoing facts, the Commission is of the opinion: That said claimant is entitled to compensation in the sum of $858 for temporary total disability computed from September 14, 1927, to January 31, 1928, and from May 14, 1928, to December 1, 1928, or a total of 47 weeks and four days compensation at the rate of $18 per week. * * *"

And from said award of the Commission the petitioners prosecute this appeal.

The petitioners set out the following specifications of error which we will consider in discussing this case, namely:

"That the Industrial Commission was wholly without jurisdiction to make said order and award, and that said order is contrary to law."

This raises the question of whether or not the Commission had authority and jurisdiction to reopen said cause, hold a hearing thereon, and render an award on the merits as the Commission did on May 17, 1930. In the first place, the record discloses, as quoted above, that there was no motion or application on file requesting a hearing in said cause because of a change in conditions of respondent herein, and according to the record, no motion was dictated into the record showing any change of condition as required by section 7296, C. O. S. 1921. The question presented to the Commission

at the time of the hearing was that respondent received no compensation for his temporary total disability. At the first hearing testimony was presented to the Commission and the award dated March 4, 1929, rendered thereon. Under the terms of said award, respondent was awarded compensation for 83 weeks and 2 days, at $18 per week for a total sum of $1,500, which said amount was paid by petitioners as evidenced by their receipt dated March 8, 1929, and approved by the Commission on March 13, 1929. The record discloses that the award of March 4. 1929, was rendered after the hearing "before Commissioner L. B. Kyle to determine liability and extent of disability," at which hearing all parties were present. Said award also contains the following order: "It is therefore ordered that within ten (10) days from this date respondent, Roxana Petroleum Corporation, or its insurance carrier, Aetna Life Insurance Company, pay to Peter A. Hornberger, the sum of $1,500, same being 83 weeks and 2 days compensation at the rate of $18 per week, **less any sum or sums heretofore paid as compensation in this case.**" We observe that the purpose for which the hearing was held on March 4, 1929, was to determine the liability in said cause and the extent of disability to the claimant. We also observe that the order rendered on said date, after directing the payment of a certain amount to Hornberger for his injury herein, specifically directs that said amount be paid, **less any sum or sums heretofore paid as compensation in this case.** The compensation directed to be deducted represents payments made to Hornberger during the time of his temporary total disability and is the same and identical compensation for which respondent herein requested the hearing held on April 17, 1930, and for which an award was made, dated May 17, 1930, awarding respondent $858, temporary total disability.

Respondent filed no motion before the Commission requesting a rehearing on said award of March 4, 1929, neither did he institute proceedings before the Supreme Court to review said award in an original proceeding before said court

If respondent was injured by said award of the Commission, his remedy was to either make an application to the State Industrial Commission for a rehearing by said Commission or to institute proceedings before the Supreme Court to review the award. These are the rights given to respondent by the law, and he, and his representative, should follow the same in protecting the interests of respondent should they feel aggrieved as a result of said award of the Commission. But no such proceedings were instituted either before the Commission or the Supreme Court until more than one year after the rendering of the award of March 4, 1929. Then petitioner requests a hearing to determine the amount of temporary total disability due. There was no motion filed setting out the statutory grounds of "change of condition," but the record discloses that at the conclusion of the hearing the respondent filed a motion setting out the amount of compensation claimed remaining due. Said motion does not set out that there is any change of condition, but does raise a question as to whether or not the first award entered by the Commission was correct as to the computation of compensation. With the record as outlined above, the Commission heard the evidence and issued an order, dated May 17, 1930, that the petitioner herein pay to respondent $858 for temporary total disability.

The sole question is:

"Did the Commission have jurisdiction to make the award of May 17, 1930?"

In consideration of this question it will be necessary to consider the statutory authorities under which said award was made and the terms and conditions of our Workmen's Compensation Law. Section 7296, C. O. S. 1921, provides:

"Review of Awards. Upon its own motion or upon the application of any party in interest, **on the ground of a change in conditions,** the Commission may at any time review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this act, and shall state its conclusions of fact and rulings of law, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any money already paid."

Section 7297, C. O. S. 1921, provides, in part:

"Appeal to the Supreme Court—Requirements. The award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within 30 days after a copy of such award or decision has been sent by said Commission to the parties affected, an action is commenced in the Supreme Court of the state to review such award or decision. * * *"

Section 7325, C. O. S. 1921, as amended, by Laws 1923, ch. 61, sec. 13, provides:

"Amendment of Orders—Continuing Jurisdiction. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time,

make such modifications or changes with respect to former findings or orders relating thereto. as in its opinion may be just, including the right to require physical examination as provided for in section 9 of article 2, of this act (7293), and subject to the same penalties for refusal. * * *"

Section 7318, C. O. S. 1921, provides, in part:

"Commission to Adopt Rules: The Commission shall adopt reasonable rules, not inconsistent with this act, regulating and providing for: * * * (8) carrying into effect the provisions of this act."

The four sections just outlined above are the sections to be considered in determining what rights the respondent had in respect to the award in question herein.

In the case of Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 Pac. 570, the court had under consideration the interpretation of sections 7297 and 7325, C. O. S 1921, and the court construed said sections as follows:

"It is a canon of construction of statutes to give force and effect to each and every section of an act of the Legislature, and we are clearly of the opinion that, to give effect to both sections 7297 and 7325, section 7297 must govern in fixing the time of the right to appeal, and, as heretofore said, that the decision of the Commission, under both sections, became final and conclusive in this case upon the failure of the plaintiff in error to commence his action to review the first decision of the Commission within 30 days after the same was rendered. Tidal Refining Co. v. Tivis et al., 91 Okla. 189, 217 Pac. 163, sustains the above conclusion."

In the case of Tulsa Street Railway Company v. State Industrial Commission et al., 105 Okla. 265, 232 Pac. 418, the court lays down the following rule in regard to reviewing awards and as to when said award becomes final:

"Where the State Industrial Commission has held a hearing and made an award of compensation for accidental injury, from which no proceedings to review have been brought to this court, and no application for rehearing has been filed with the Commission within the time or upon any of the grounds prescribed by the rules promulgated by the Commission, such award is final. Thereafter the jurisdiction of the Commission to review such award is limited by the provisions of Comp. St. 1921, section 7296, and attaches only where there has been a change in conditions subsequent to the award."

In the case of Bedford-Carthage Stone Co. et al. v. Industrial Commission of Oklahoma et al., 119 Okla. 231, 249 Pac. 706, this court had before it the proposition of whether or not an award for compensation for acci-

dental injury is final where no appeal is made from said award and no rehearing requested before the Commission. We quote the following from said opinion:

"It was held in Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 Pac. 163, that a decision of this court declaring the law to be different from that applied by the Commission, in making an award, rendered subsequent to such award, did not constitute such a change in conditions as contemplated by section 7296. It is contended by claimant, however. that by section 7325, as amended by section 13, c. 61, Session Laws 1923, a continuing power and jurisdiction is conferred upon the Commission in all cases to change or modify its former orders and awards. The amended section reads:

" '7325. The power and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto, if, in its opinion, it may be justified, including the right to require physical examinations as provided for in section 7293, and subject to the same penalties for refusal; provided, * * *" (provisions omitted).

The amendment consists of the proviso. Except for the proviso the original section is unchanged.

"If there were no other sections touching upon the question of jurisdiction of the Commission, the contention might be sustained, but such interpretation would make nugatory section 7297, which provides that the award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction between the parties unless within 30 days after a copy of such award or decision has been sent to the parties an action is commenced in the Supreme Court of the state to review the award or decision. When sections 7235, 7296, 7297, and 7325 are considered together, it must be held, we think, that it was the legislative intent that the Commission have a continuing power and jurisdiction to review its award on the ground of a change in conditions only. and, except for a change in conditions, the award is final and conclusive upon all questions within its jurisdiction unless suit is commenced in this court within 30 days to review the award or decisions."

In the case of Liddell v. State Industrial Commission et al., 126 Okla. 235, 259 Pac. 265, the court had under consideration the sections of our statute set out above, and in said opinion the court discussed said sections as follows:

"It appears to be well settled that the Industrial Commission of the state of Oklahoma has inherent power to change, modify, or vacate its order, and that its jurisdiction is continuing; and it may make such orders as may meet the ends of justice,

upon its own motion or upon the motion of an interested party, provided there is a change in condition or that the interested party makes application within the time prescribed by the rules of the Industrial Commission. Wilkerson v Devonian Oil Co., 114 Okla. 84, 242 Pac. 531; Bedford-Carthage Stone Co. v. State Industrial Commission, 119 Okla. 231, 249 Pac. 706; Herrod v. Eddie Mill & Elevator Co., 121 Okla. 260, 249 Pac. 395.

"Under section 7296, C. O. S. 1921, the Commission may at any time review an award and make such an award ending, diminishing, or increasing the compensation previously awarded, upon its motion or upon the application of an interested party, on the grounds of a change in condition.

"Section 7297, C. O. S. 1921, as amended by the Session Laws 1923, c. 61, section 8, provides that an award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction, unless, within 30 days after a copy of said award or decision has been sent by the Commission to the parties affected, an action is commenced in the Supreme Court to review the same.

"Section 7325, C. O. S. 1921, as amended by the Session Laws of 1923, c. 61, section 13, provides that the power and jurisdiction of the Commission shall be continuing, and it may make such modifications and changes with respect to its former orders as in its opinion may be justified.

"Section 7318, C. O. S. 1921, provides that the Commission shall adopt reasonable rules, not inconsistent with the Compensation Act, for the purpose of carrying into effect the provisions of the Compensation Act, and under this provision the Industrial Commission has adopted certain rules, among which is rule 30, which provides that any party aggrieved by an award may, at any time within 10 days from the date of the award, apply for a rehearing on the grounds that the Commission acted without authority or in excess of its powers, and that the evidence does not justify the finding of the Commission, etc.

"In construing these sections together with the rule above referred to, this court in the case of Bedford-Carthage Stone Co. v. State Industrial Commission, supra, held that where an award was not questioned by an application for a rehearing within 10 days as provided by the rules, nor within 30 days by an action in the Supreme Court, that such award is final and conclusive upon all questions within the jurisdiction of the Industrial Commission."

In the case of K. D. Oil Co. et al. v. Datel et al., 145 Okla. 264, 292 Pac. 564, the court lays down the rule relative to reopening a case by the Commission, syllabus No. 2 of said cause being as follows:

"In order to reopen a case and award further compensation upon account of change of condition, the claimant must establish before the Industrial Commission that there has in fact been a change of condition since the original award was made, and, further, that same was due to the original injury."

And also in the body of said opinion, the court quotes with approval from the Bedford-Carthage Stone Co. Case, on its interpretation of the sections of our statute as above set out, wherein the court says:

" 'It was held in Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 Pac. 163, that a decision of this court declaring the law to be different from that applied by the Commission, in making an award, rendered subsequent to such award, did not constitute such a change in conditions as contemplated by section 7296. It is contended by claimant, however, that by section 7325, as amended by section 13, c. 61, Session Laws 1923, a continuing power and jurisdiction is conferred upon the Commission in all cases to change or modify its former orders and awards.'

"After setting out section 7325, and commenting upon the same in connection with section 7297, the court says:

" 'When sections 7296, 7297, and 7325 are considered together it must be held, we think, that it was the legislative intent that the Commission have a continuing power and jurisdiction to review its award on the ground of a change in conditions only, and, except for a change in conditions, the award is final and conclusive upon all questions within its jurisdiction unless suit is commenced in this court within 30 days to review the award or decisions.'

"In the case of Vietti v. Crowe Coal Company et al., 133 Okla. 81, 271 Pac. 160, this court said:

" 'Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Industrial Commission may at any time review any award, and, upon such review, may make an award ending, diminishing, or increasing the compensation previously awarded. By the term "change in condition" is meant a change in condition occurring after the previous award of the Commission'."

In the case of Olentine et al. v. Calloway et al., 147 Okla. 137, 295 Pac. 608, this court laid down a rule as to the requirements before the case can be reopened by the Commission under section 7296:

"The previous decisions by this court and the above analysis of section 7296, supra, disclose that three factors must appear, in the inception, before the Commission is authorized to reopen a case under section 7296, supra, namely: (1) It must appear that the Commission has 'previously awarded the claimant compensation.' This is a necessary condition precedent. (2) That in fact

there has been a change of condition. (3) That the change of condition was due to the original injury."

In the Ward Case the court held that in construing sections 7297 and 7325, section 7297 must govern in appeals, and that decisions of the Commission under both sections become final and conclusive when no proceeding to review the same is instituted within 30 days. In the Tulsa Street Railway Case the court held when no application for a rehearing has been filed with the Commission within the time and upon the grounds prescribed by the rules promulgated by the Commission, such award is final thereafter; the jurisdiction of the Commission to review such award is limited to section 7296, C. O. S. 1921, and attaches only when there has been a change in condition subsequent to the award. In the Bedford-Carthage Stone Company Case, and later in the K. D. Oil Company Case, this court construed sections 7296, 7297, and 7325 together and held that the Commission had continuing power and jurisdiction to review its awards on the grounds of change of condition only, and that change of condition must occur after the original award was made. In the Liddell Case this court rendered its interpretation of sections 7296, 7297, 7325, and 7318, and held that these four sections, construed together in connection with the former decisions of this court, provide that where an award was not questioned by an application for rehearing before the Commission in accordance with the rules of said Commission nor with an action to review in the Supreme Court, such award is final and conclusive upon all questions within the jurisdiction of the Commission. Also see Olentine v. Calloway, 147 Okla. 137, 295 Pac. 608.

Under the law as just stated, when the Commission held the hearing and rendered its award on March 4, 1929, and ordered compensation paid to respondent herein, said award became final and binding upon all parties when no application for rehearing was filed before the Commission in accordance with the rules of said Commission and no appeal was filed before the Supreme Court to review the said award by the Supreme Court. After said award became final and binding the Commission retained jurisdiction to make further awards in said cause only where a change of condition was shown to exist after the rendering of the previous award, and unless the respondent herein could show that there had developed a change of condition since the rendering of the award on March 4, 1929, the Commission would have no jurisdiction to reopen said cause and render further compensation to respondent herein

In accordance with the above authority and the construction placed upon sections 7296, 7297, and 7325, and 7318, we are forced to hold that the Commission had no jurisdiction to reopen this cause and render the award made herein on May 17, 1930, in the amount of $858. Said item was for temporary total disability, and in the award of the Commission of March 4, 1929, said Commission found and ordered that the claimant receive $1,500 compensation, less any sums heretofore paid as compensation in this case. The amount ordered deducted by the Commission in the first hearing is the identical item for which compensation is awarded in the latter hearing. Said matter was before the Commission, and in accordance with the authorities of this court, was final and binding, since no appeal had been taken therefrom. The award of the State Industrial Commission is reversed, with directions that the same be dismissed.

RILEY, HEFNER, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and KORNEGAY, J., dissent.

---

KORNEGAY, J. (dissenting). I dissent from the reasoning in this case, as well as the conclusions reached. As applied to the particular case, the conclusion denies to a workman that which clearly belongs to him under the provisions of the statute, as well as by a great many decisions of this court. This, however, is not so important as the effect of this decision upon future cases.

The injury in the present case fades into insignificance as compared to the idea that the court can take the place of the Legislature, and by judicial utterance strike down the basic, underlying principle that is the foundation of the Workmen's Compensation Law of this state. The principle announced is that the technical doctrine, in lawyer's language called "res adjudicata," can be successfully invoked by the insurance carrier to such an extent, that it can escape payments and the assumption of risk that it has received premiums for under the laws of the state.

I am not alone, however, in my views as to the result in this case, though perhaps I may be alone in the individual views that I may express herein, and do not put them forth as being anything more than my individual judgment. As I view this case, it is not pride of opinion alone that appears to influence the decision, but it goes so far as

to bring in pride of expression, to the disregard of plain statutory requirements.

The case is largely based on a decision of this court confirming a Commissioner's decision in what is known as Ward v. Beatrice Creamery Company, 104 Okla. 91, 230 Pac. 872. There are two of those cases, though it all arose out of one transaction. Ward was an employee of the Beatrice Creamery Company, which was engaged in handling cream. It used a soda ash for the purpose of sweetening the cream. The employee found himself very badly hurt as a result of it, claiming lack of knowledge of its effect on the human system. If the record in the case can be relied upon, it was a case that at common law would have resulted in a verdict against the Creamery Company. However, the Workmen's Compensation Law was in force when the injury occurred.

The claimant applied to the Industrial Commission. They disclaimed jurisdiction. He then went into the district court of Oklahoma county. The court very properly held that the jurisdiction to entertain the case was in the Industrial Commission, and that by virtue of the Workmen's Compensation Law it had no authority to investigate the case. From a ruling to that effect, proceeding in error was brought to this court, and this court held, in the case of Ward v. Beatrice Creamery Company, above, that the jurisdiction was not in the district court, but was in the Industrial Commission to hear his case. He then went back to the Industrial Commission. They set aside their former order denying jurisdiction, and held that his trouble was an occupational disease, and denied compensation. Ward, the claimant, brought proceedings in this court to review, and this court held (Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 Pac. 570) that the man could have no recovery, basing its right so to do on the doctrine of "res adjudicata," arising out of the decision of the Industrial Commission that it had no jurisdiction in the first instance. A most deserving claimant, in this way, lost the benefit of the Workmen's Compensation Law under the doctrine of "res adjudicata," though its constituent elements were wanting. However, had the court examined more closely the act itself, and looked to its requirements, the result would have probably been different.

The syllabus in the last-named case only purports to deal with the question of the time that action can be commenced in the Supreme Court to review an award. It states that an award becomes conclusive if proceedings are not commenced within 30 days. The body of the opinion is as follows:

"Opinion by THOMPSON, C. This action was commenced in the Supreme Court of the state of Oklahoma by Benjamin O. Ward, plaintiff in error, against the Beatrice Creamery Company, defendant in error, to review a decision of the State Industrial Commission, denying him compensation for injury claimed to have been received while in the employ of the defendant in error. Notice of injury was filed with the State Industrial Commission on the 21st day of May, 1923. Notice of hearing was issued and served upon the defendant in error, and, on the 15th day of June, 1923, a decision was made and an order entered by the State Industrial Commission after a full hearing, denying the claim of plaintiff in error, and the cause was dismissed for want of jurisdiction. On the 26th day of November, 1924, the plaintiff in error filed his motion to set aside and vacate the order made by the Commission on the 15th day of June, 1923, upon the grounds that after the said order of the Commission, the claimant filed a petition in the district court of Oklahoma county, seeking a recovery for the injury involved in this case. The defendant in error demurred to his petition, which was sustained by the district court, and on appeal to the Supreme Court on the 12th day of November, 1924, the Supreme Court affirmed the judgment of the district court in the case of Ward v. Beatrice Creamery Co., 104 Okla. 91, 230 Pac. 872, on the grounds that the district court had no jurisdiction and that exclusive jurisdiction was vested in the State Industrial Commission. An objection was made by defendant in error to the motion to vacate and set aside the order made on June 15th, 1923, for the reason the Commission had no jurisdiction to vacate and set aside said order; that said order was binding and irrevocable. The court overruled the objections of defendant in error and sustained the motion of plaintiff in error, and the defendant in error objected and excepted to the order of the Commission in this regard and gave notice of appeal to the Supreme Court of Oklahoma from said order, and objected to the introduction of any testimony on the ground that the Commission was without jurisdiction to try said cause. At the close of the hearing, the Commission denied the right of plaintiff in error to any award upon the ground that he had not shown by his testimony that he had any right to recover against the defendant in error, upon the ground that it was an occupational disease from which plaintiff in error was suffering and not a compensable injury within the purview of the Workmen's Compensation Law, and the cause comes to this court upon the record for a review of the decision of the State Industrial Commission.

"It will be observed that the decision of

the Commission on the first hearing was made on the 15th day of June, 1923, after a full hearing; that no appeal was ever taken from this order and no petition filed in this court or action commenced in this court to review said decision by the plaintiff in error; that this action for review is from the final decision of the Commission of May 5, 1925. We are of the opinion that this appeal, or action to review the decision of the State Industrial Commission, comes too late. If the plaintiff in error desired to have this court review the decision of the State Industrial Commission, he should have commenced his action within 30 days after June 15, 1923, when the State Industrial Commission rendered its decision, denying him the right to an award of compensation.

"Under section 7297, Comp. Stat. 1921, the Legislature said:

"'The award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within 30 days after copy of such award or decision has been sent by said Commission to the parties affected, an action is commenced in the Supreme Court of the state to review such award or decision. Said Supreme Court shall have original jurisdiction of such action, and is authorized to prescribe rules for the commencement and trial of the same. Such action shall be commenced by filing with the clerk of the Supreme Court a certified copy of the award or decision of the Commission attached to the petition by the complainant, wherein the complainant or petitioner shall make his assignments or specifications as to wherein said award or decision is erroneous and illegal.'

"Section 7296, preceding, provides that the Commission itself may review any award made by it 'ending, diminishing, or increasing the compensation previously awarded,' etc. There was no award made in this case in favor of the plaintiff in error for the Commission to end, diminish, or increase.

"In the language of section 7297, quoted above. the court said, 'The award or decision shall be final and conclusive.' We are, therefore, compelled to find that the failure of plaintiff in error to comply with section 7297 within 30 days from June 15, 1923, to file his action in this court by filing with the clerk of the Supreme Court a certified copy of the award, or decision, of the State Industrial Commission attached to his petition, is a bar to any further action by the Commission or this court upon his claim for compensation under the Workmen's Compensation Law of this state. It is, however, urged that under section 7325, Comp. Stat. 1921, as amended by section 13, page 128, Session Laws of Oklahoma 1923, the jurisdiction of the State Industrial Commission was a continuing one. The first part of said section, above referred to, is identical with section 7325, Comp.

Stat. 1921, and the only amendment contained in the Session Laws of 1923 is a proviso that follows the first part, and is relative to the continuing jurisdiction, which empowers the said Commission to effect a final settlement between the parties upon a proper petition, and in the same proviso it is said:

"'The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission.'

"In the last above quotation, it clearly appears that the question of appeal must be determined on a petition for a final settlement between the parties, under section 7297, above quoted.

"It is a canon of construction of statutes to give force and effect to each and every section of an act of the Legislature, and we are clearly of the opinion that to give effect to both sections 7297 and 7325, that section 7297 must govern in fixing the time of the right to appeal, and, as heretofore said, that the decision of the Commission, under both sections, became final and conclusive in this case upon the failure of the plaintiff in error to commence his action to review the first decision of the Commission within 30 days after the same was rendered.

"The case of Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 Pac. 163, sustains the above conclusions, where this court said:

"'Section 7297, Comp. Stat. 1921, provides the procedure for reviewing the awards made by the State Industrial Commission by requiring the aggrieved party to commence action in the Supreme Court within 30 days after a copy of the award has been sent by the Commission to the party affected.'

"We are, therefore, of the opinion that it was error in the State Industrial Commission to sustain the motion filed by the plaintiff in error to set aside and vacate its former order of June 15, 1923, and that said order was final and conclusive as to all parties, and that the cause is hereby remanded to the State Industrial Commission with instructions to deny the motion of plaintiff in error to vacate and set aside said order, and to sustain the objections of the defendant in error thereto.

"By the Court: It is so ordered."

In the opinion, the case of Tidal Refining Co. v. Tivis is relied upon as its foundation. It is reported in 91 Okla. 189, 217 Pac. 163, and an examination of the case shows that in that case the Industrial Commission made an award in favor of the injured workman for his injury. It is stated in the body of the opinion that no complaint was made by the oil company that the claimant was not entitled to the award, or that it was excessive. There is a further statement

that there was no change in condition, and it is further stated that the employer was not entitled to any modification, and therefore the Commission on the request to modify the award refused to do so. Then a proceeding was brought in the court to review the action of the Commission, and all that was held was that the award made by the Industrial Commission bound the Tidal Refining Company. Evidently some other decisions of the court were relied on by the Tidal Refining Company in bringing the matter. The court held that on a question of fact as to the petitioner being an employee, the award was conclusive upon the employer. That case is used as a foundation for Ward v. Beatrice Creamery Company, set out above, but in fact it has nothing in common with it, so that the reasoning of Ward v. Beatrice Creamery Company is about all that there is to support it.

About all there is in the Beatrice Creamery Company Case, as disclosed by the syllabus, is that the limit in time for appealing from an award made under section 7297 is the same as the limit in time of appealing from an order made under section 7325. The remarkable thing, however, in the above case, is that it says the cause was originally dismissed for want of jurisdiction by the Industrial Commission on the 15th of June, 1923, and that then the claimant went to the regular court, and a demurrer was sustained to his petition there for want of jurisdiction. In the Ward v. Beatrice Creamery Co. Case, 104 Okla. 91, 230 Pac. 872, there is a statement of the facts, and the substance of the petition that the employee filed in the district court is set out, from which it is apparent that as a common-law action, the plaintiff had a case, and was asking for judgment for $36,000. There were two grounds of the demurrer, one was for want of jurisdiction and the other was that he had no case. The trial court sustained the demurrer on both grounds. Of course, if it had no jurisdiction of the matter, it had no jurisdiction to adjudge that the claimant had no case. This court held that the only question to be decided in that matter was whether the injury came within the jurisdiction of the State Industrial Commission. It proceeded to ascertain that the district court had no jurisdiction, and the State Industrial Commission had exclusive jurisdiction. The syllabus in 104 Okla. 91, is as follows:

"1. The term 'accidental injury,' as used in the Workmen's Compensation Act of this state, must not be given a narrow meaning, but, according to the great weight of English and American authorities, the term is to receive a broad and liberal construction, with a view of compensating injured employees, where the injury results through some accidental means, was unexpected and undesigned, or may be the result of mere mischance or of miscalculation as to the effect of voluntary action.

"2. Burns, scalds, and salivation, suffered by an employee, caused by the use of a substance known as soda ash in the process of sweetening cream, in a hot room, in the creamery of the defendant corporation, in the course of his employment, are within the operation of the Workmen's Compensation Act, providing compensation for accidental injuries. In such a case the State Industrial Commission has exclusive jurisdiction in this state to grant relief in an action for damages to such employee."

It announced that the decision of the State Industrial Commission to deny jurisdiction would not be effective to confer jurisdiction on the state court, if it did not have jurisdiction. It proceeded to refer to the Legislature's purpose in enacting the Workmen's Compensation Law, being to secure a speedy hearing, and that a liberal construction and interpretation should be given it. It proceeded then to cite the case of Beck Mining Company v. State Industrial Commission, 88 Okla. 34, 211 Pac. 69. The final ending of that case is as follows:

"We are therefore of the opinion that the district court of Oklahoma county was not vested with jurisdiction to hear and determine this cause, and that the jurisdiction is by the terms of the statutes and decisions of the courts vested in the State Industrial Commission, and that the court was correct in sustaining a demurrer to the petition upon jurisdictional grounds. It therefore follows, that the judgment of the lower court should be, and is hereby affirmed."

Pursuant to this judgment, which affirmed that the Commission had jurisdiction, and it is very evident from the slightest inspection of the law that it did, the claimant went back to the Commission. It took jurisdiction in accordance with the finding above, and they heard the case and turned him out again on the merits. The claimant, on the 26th day of November, 1924, filed his motion to set aside and vacate the order made by the Commission on the 15th day of June, 1923, evidently relying on the decision of this court above set out. The Commission, evidently feeling bound by the judgment of this court, sustained claimant's motion, and heard the case on its merits, and at the close of its hearing, found that the claimant did not have any right to recover against the defendant in error, on the ground that it was an occupational disease from which the

claimant was suffering, and not a compensable injury within the purview of the Workmen's Compensation Law. Ward brought the action to this court to review this aspect of the case. Evidently the court did not appreciate what was before it, because it did not pass on the question as to whether or not the case came within the act, though clearly it did on its face, and sent the case back to the Industrial Commission with the directions to deny the motion of the plaintiff in error to vacate the order, setting aside the order holding the case was not in the jurisdiction of the Commission, though there was no appeal by the Creamery Company from the action of the Commission in setting aside the former order. The appeal by the claimant was from its action in not awarding compensation on the merits, but that is not discussed in the opinion, and the other could not be discussed very well, because the Creamery Company never raised it, nor did it appeal from the order made pursuant to the motion on the 26th of November, 1924.

It will thus appear that the very foundation for the opinion in this case is a case where the claimant was clearly entitled to compensation, and it was a case where this court did not pass on the matter that was before it, and referred to a case as its foundation that did not bear upon the question at all. Besides, the court evidently proceeded on the theory that it was a proceeding in error, rather than an original proceeding to review. Under these conditions, the only safe way to do is to look at our statute, as the case of Ward v. Beatrice Creamery Company could not fairly be referred to as settling any rule.

A resume shows as follows: The decision of the Industrial Commission at first was that it had no jurisdiction. The decision of the Supreme Court was that it did have, and pursuant to the decision of the Supreme Court, the claimant went to the Commission. It recognized that it was bound by the decision of the Supreme Court, and set aside its former order denying jurisdiction, and took jurisdiction. However, on the merits, it denied claimant relief.

No proceedings of any kind, as indicated by the recitals, were taken by the carrier from the order setting aside the Commission's former order denying jurisdiction, and naturally it would not, for the reason that it had won on the merits. However, from the second decision of the Commission, the proceedings were taken by the claimant from the order refusing compensation. This fact was lost sight of in the Supreme Court by the Supreme Court, and it went off on a point that was not before it.

Under these conditions, it is hard to see how anyone could appeal to Ward v. Beatrice Creamery Company as a foundation for a judgment to deny an individual, adjudged to be entitled to it, pay at the hands of the insurance carrier, employed for hire to assume the risk. Clearly, as developed under all the decisions of this court, the claimant in Ward v. Beatrice Creamery Company was entitled to his compensation.

The best way in the matter would be to examine the statute. As originally drawn, in the year 1915, it was a little simpler than it is now, though not much. All recognize the occasion for Laborer's Compensation Laws. Starting out from the simple methods employed in labor of a century ago, the doctrine of fellow servant had come down, but as industry increased, the doctrine of fellow servant was still clung to by the courts, where the servants were no longer associated together. In a large mine frequent explosions occur as a result of negligence of one man who was unknown to the man that was killed. Same way in the railroad business, and in factories. The result was that in order to get rid of some of the court doctrine, the laboring element succeeded in getting legislation to require the employers to guard dangerous machinery. That, however, did not seem to give very much relief, as the courts then resorted to the doctrine of the assumption of risk, and held that the employee assumed the risk, and therefore could not recover.

Other courts began to enlarge on the doctrine of contributory negligence, and did not allow a recovery if the negligence of the co-servant contributed measurably, and they also announced the doctrine that the negligence of the man himself, if it contributed in any degree, would bar recovery. One of the most flagrant cases of the futility of this kind of legislation can be found in what is known as the St. Louis Cordage Case, decided in the United States Circuit Court of Appeals of the 8th Circuit in the year 1903, and reported in the 126 Federal, at page 495. Judge Sanborn and Judge Van Devanter stood for the rule denying the injured girl, whose fingers slipped and fell into an unguarded gear and were cut off, the right of recovery, citing many cases, and filling from page 495 of the 126th Federal reporter to page 513. Judge Thayer dissented on the ground of humanity, his dissenting opinion beginning on page 514. He says:

"I do not concur in the foregoing opinion.

The laws of Missouri (Rev. Stat. 1899, sec. 6433) required the defendant company to keep the gearing which occasioned the plaintiff's injury 'safely and securely guarded when possible' for the protection of its employees. This statute was enacted in pursuance of a sound public policy; that is to say, to insure. as far as possible, the safety of the many thousand artisans and laborers who are daily employed in mills and factories throughout the state, and while so employed are exposed to unnecessary risks of getting hurt if belting, gearing, drums, etc., in the establishments where they work are left uncovered when so situated that they may be covered readily. The act was inspired by the same motives which induced the Congress of the United States (Act March 2, 1893, c. 196, 27 Stat. 531, U. S. Comp. St. 1901, p. 3174) to require cars to be equipped with automatic coupling appliances when it was discovered that hundreds of brakemen were annually killed or made cripples for life by the use of the old-fashioned couplers that do not couple by impact. A wise public policy demands that as far as possible human life shall be preserved, and that there shall not be in any community a large class of persons who are unable to earn a livelihood because they have become maimed and crippled through exposure to unnecessary risks. The statute in question is not only a wise measure of legislation, but was prompted by a humane spirit. For these reasons it should not be so applied or construed by the courts as to defeat the objects which the Legislature had in view, nor in such a way as to render it less efficient than it was intended to be in the promotion of such objects.

"It is conceded that the defendant company neglected to perform its statutory duty; it left the gearing which inflicted the injury, uncovered for several weeks, although it could have been covered easily, and was covered when the plaintiff below entered its service, and as the result of such neglect, the plaintiff below, a girl of 20, who had scarcely reached years of discretion, sustained a severe and painful injury. The majority of the judges of this court hold that she cannot recover because, by working at the machine for 10 or 15 minutes each day for about six weeks after the covering of the gearing had been removed, she consciously entered into a contract with the defendant company, although her wages were not increased, that she would assume the risk of getting hurt by the uncovered gearing, which she did not assume when she entered its service, and that she would absolve it from all liability."

Shortly after this time, a Constitutional Convention of Oklahoma was being agitated, and finally in 1906 delegates were elected to frame such. These delegates recognized the hardships that had been visited on the laboring classes in the struggles for better security for life and health, and at the same time they recognized the difficulty that attended their going into court for a redress of grievances. They accordingly provided that where the assuming of risk and contributory negligence were involved, the court should not pass on it, but leave it to a jury. They further struck down the doctrine of the negligence of a fellow servant, and also all statutory limitation of amount of recovery for a death loss.

About the time of statehood Congress awoke to the proposition of a better chance for employees engaged in interstate commerce, and it introduced the doctrine of comparative negligence, leaving it to a jury to say the degree of negligence, the act being passed sometime about 1908.

With these conditions before them, the Legislature in 1915 followed suit of other states, and finally wiped out the proposition of ordinary negligence in its entirety in industrial accidents. It also wiped out court procedure, and provided that no courts could have jurisdiction of an action of that sort. Its. evident purpose was to get rid of the delay of courts and of the slow action of judges, the machinations of lawyers, and the long delay that would generally occur by appeal from court to court by the corporations that were engaged in industry.

The employer had its lawyer by the year, and was always on the lookout. The laborer, hurt, was compelled to look for a lawyer that he knew very little about. The lawyers engaged in such controversies were generally of two kinds, one the corporation baiter, and the order the corporation defender. So, to obviate that difficulty, the Oklahoma Legislature passed a Workmen's Compensation Law that probably goes further than any of them in getting away from court procedure. However, to enforce the orders of the Commission, it was necessary to use court machinery. At first the county court was employed as a means of enforcing the attendance of witnesses under a subpoena issued by the Commission. (Section 10, Session Laws, 1915, page 598.) The expenses of the witnesses were to be paid in the same manner as other expenses of the Commission, provided that the Commission was of the opinion that the testimony was material, but not otherwise.

The Commission had power to take depositions of witnesses, residing within or without the state, in the same manner as they are taken in civil actions in courts of record. They were empowered to hold an investiga-

tion at any point in the state, and all these provisions run counter to the ideas embodied generally in court procedure. It is specially provided in that act (sec. 2, art. 6) that there should be no court procedure, and that insurance should be provided for compensation. The sections are as follows:

Section 2, article 6:

"Section 7339. Personal Injuries—Court Jurisdiction Superseded by Commission. The right of action to recover damages for personal injuries not resulting in death arising, and occurring in hazardous employments as herein defined, except the right of action reserved to an injured employee or his dependents or other legal representatives in section 2 of article 2 (7286), and section 10 of article 5 (7337), of this act, is hereby abrogated, and all jurisdiction of the courts of this state over such cases, except as to the cause reserved to such injured employees or their dependents or other legal representatives in section 2 of article 2 (7286) and section 10 of article 5 (7337), of this act is hereby abolished."

Section 2, article 2:

"Section 7286. When Court Action Permissible. The liability prescribed in the last preceding section shall be exclusive, except that if an employer has failed to secure the payment of compensation for his injured employee, as provided in this act, then an injured employee, or his legal representatives, if death results from the injury, may maintain an action in the courts for damages on account of such injury, and in such an action the defendant may not plead or prove as defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee; provided, that this section shall not be construed to relieve the employer from any other penalty provided for in this act for failure to secure the payment of compensation provided for in this act."

It is further provided that the claimant could not settle without the consent of the Commission, and then only in manner prescribed by the Commission. It is further provided in section 16, page 588, of the act, that if payment under the terms of the award was not made, the amount should be a liquidated claim for damages against the employer or insurance carrier, and that this with 50 per cent. penalty could be recovered by the Commission, and that no compromise could be had of it without the consent of the Commission, and that the Commission should collect and pay to the people entitled, the money collected, but that the penalty for nonpayment should go to the expenses of running the Commission.

Section 17 provided that the right to claim compensation should be forever barred, unless within a year a claim for compensation should be filed with the Commission, a period different from the limitation for court procedure. Section 13, preceding these sections referred to, provided that the award of the Commission should bind the parties, unless proceedings to review were commenced in the Supreme Court. The question would occur as to what was meant by section 13. It evidently means what it says, and that neither party without the action of the Commission could in any way vary the award, take less or procure more, for the injury. It further means that the payments under it should be made pursuant to the directions of the Commission. However, after the application was made to the Supreme Court, then the Commission would be deemed a party to the action, and not until then.

It was further provided that the proceedings should be heard in a summary manner, and it is further provided that the Commission should not be liable for any costs. In section 12, there is a statement to the effect that, of its own motion, the Commission could review any award, and on such review make another, with a proviso that on the review, the maximum or minimum provided in the act should prevail. These sections are found in the articles 2 and 3.

Article 4 creates the commissioners. They are not required to be learned in the law, and are to be appointed by the Governor, with power to remove, and are bonded officers, and are not permitted to serve on the committee of any political party. They are required to be in continuous session. They are required to adopt reasonable rules with reference to notice, forms of application, and the methods of making investigations.

At page 492, section 14 of article 4, about the last thing in the article on the authority of the Commission, is found the following:

"Sec. 14. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modification or change with respect to former findings or orders relating thereto, as in its opinion may be just, including the right to require physical examination as provided for in section 9 of article 2 of this act, and subject to the same penalties for refusal."

It will thus be seen that, as originally created, no judicial authority that would call out the principle of res adjudicata was conferred, but that the jurisdiction of the Commission should be continuous under each case, and its power should be continuing un-

der each case. The Legislature was not content with this, and evidently for fear contentions arising out of res adjudicata would occur with reference to the administration of the law, it went further and said the Commission might "from time to time make such modifications or changes with respect to former findings or orders, relating thereto, as in its opinion may be just."

Language could not be more explicit; terms could not be broader. The jurisdiction is mandatory. Its exercise depended on the sense of justice of the Industrial Commission, independent of "res adjudicata." It is a clear expression of legislative will. When the Legislature saw fit to do this, this court had a duty to perform, which is not to change in any way a legislative enactment by a declaration that destroys it, but to let it operate.

Of course, as between the parties, the action of the Commission in all matters of settlement is binding, as they can do nothing without the Commission sanctioning. These and other features of the act soon gave rise to controversy as to their constitutionality, but the courts, both of our state and of the United States, held that getting rid of the court procedure and the "res adjudicata" idea, and those things on which it is based, did not violate any of the constitutional provisions; that the Constitution was made for men, and should adapt itself to the conditions of men, notwithstanding the power of the courts was not as great as it had been, and notwithstanding the fact that the old doctrines of negligence and assumption of risk were done away with by the act.

The Legislature, to more efficiently carry out its purpose, provided in the event of proceedings brought to the Supreme Court, thereby deferring a settlement, there should be a supersedeas bond, which evidently had not been thought of to start with, so far away was the mind of the Legislature from court procedure. There were later amendments which provided for docketing the award, and permitting an execution to carry it out, at all times making the award made by the Commission binding on the parties, and also on the courts and executive officers, still holding, however, jurisdiction in the Commission to handle the business, and to make any changes in its former orders or rulings dictated to it by its sense of justice. Under the original act, there could be no final settlement that would bind.

Under the old regime all damages accruing to the laborer were assessed at one time by the jury, and at a time when it was impossible to foresee the results. The malingerer got in his work, but suffering workmen frequently failed. In the court battle, he would not have much show. "Scientific men," ordinarily called experts, the other side could hire, but he could not. The result was a great miscarriage of justice. The laborer got nothing, but was dumped on the human scrap-pile. The Legislature got rid of court procedure, as it had been found that it was not well calculated to help along the object of its protection. However, a demand arose whereby there could be an end to the administration, owing to the fact that there were so many transients, and the administration of the law at that time had been by piecemeal, and so in 1923, the Legislature introduced a qualification upon the continuing power and jurisdiction of the Industrial Commission. It amended the act, and for the first time conferred upon the Commission the right to do those things that would be final and conclusive on the parties, and the Commission itself. In other words, res adjudicata, for the first time, came in in the year 1923. But it was not based on simple court pronouncement, it was based on payment, and without it there was no final settlement, and nothing that could be classed as "res adjudicata."

As applied to the present case, it is very doubtful whether the elements that make up "res adjudicata" could possibly be in this case any more than it was in the case on which it is based, Ward v. Beatrice Creamery Company. If the court decides that it has no jurisdiction, it immediately decides that it cannot adjudicate. If the power that creates the Commission defines what it can adjudicate and its effect, the court can adjudicate all it wants to, and its adjudication would be nothing more than brutal thunder. To put it in other words, the creature is not greater than the creator. The court is not any greater than the law that limits its power. Fairly illustrative of this is a condition that sprang up on the Indian reservations in Northeast Oklahoma after the allotments were made to the Indians located within the limits of the Quapaw agency. Congress limited their power of alienation. However, two United States judges, at the instance of some of their associates, held that a contract by an Indian heir, made to a speculator for his interest in the land, was good, and ordered the enforcement of the contract. A very thriving business was going on, but finally the case of Goodrum v. Buffalo was started in the federal court of the Indian Territory, to set aside these conveyances and these decrees

that were solemnly entered. The case was bitterly fought by another federal judge on "res adjudicata," and finally landed in. the Circuit Court of Appeals for the 8th Circuit, and the opinion of the court was rendered, and it has stood as a landmark in the effect of "res adjudicata" as applied to cases where the legislative authority has declared by statute what was permissible. In that case, the court, referring to the scheme that had been fabricated to bring about a result differing from legislative policy, denounces all schemes subserving of such requirements.

The third division of the syllabus in Goodrum v. Buffalo, 162 Fed. 817, is as follows:

"3. Submission of Controversy—Judgment—Res Adjudicata.

"Notwithstanding the general rule that a judgment between parties sui juris, where the court has jurisdiction over the subject-matter and the parties, is conclusive of every question of fact and law in contestation, and cannot be attacked in a collateral proceeding, a judgment rendered by the United States Court in the Indian Territory, under a stipulation between a Quapaw Indian and a white man, submitting under the provisions of local law, for decision the question of the power of such Indian allottee, or his heir, to convey his or her allotment within the 25-year period of limitation under Act Cong. March 2, 1895, c. 188, 28 Stat. 907, adjudging the validity of such conveyance, held to be invalid, when interposed to defeat the action of ejectment by the Indian heir against the prevailing party in such proceeding, for the following reasons: (1) Because the stipulation of submission, in the affidavit thereto, omitted a material fact which is jurisdictional in character; (2) because the stipulation and the judgment do not describe the land in suit; (3) because, as to the power of alienation of such land, the Indian allottee and his or her heir, within the limitation period of 25 years, was not a person sui juris, capable of assenting to such submission; and (4) because the United States court in the Indian Territory, being itself a creature of Congress, with limited jurisdiction, was not invested with jurisdiction to extend by mere decretal order a power of alienation over such lands denied by another act of Congress to such Indian."

The statement of the case therein throws light upon what this means. In the body of the opinion, at page 820, the court uses the following language:

"The language of the act and the patent could not have been more exact and clear to express the purpose and policy of the government to deny the power and right of these allottees to dispose of the lands in any manner until after the stated period of 25 years. As the greater includes the lesser, no contract, agreement, or obligation in form entered into by the allottee or his heirs within the limitation period, could possibly have the effect to operate as, or result in, a transfer of the title to these lands to a third party. There is but one opinion among the courts, with the single exception of the ruling in said United States court of the Indian Territory, as to the construction of such acts of Congress and patents made thereunder, and that is that any and all schemes and devices resorted to for the purpose of acquiring title to the Indian allotments during the period of such limitation are abortive; and this for the palpable reason that it is a period of absolute disability on the part of the Indian to alienate his lands."

In disposing of the "res adjudicata," created by the action of the Indian Territory federal court, among other things, the court said:

"Aside from these criticisms, the proceeding was not effectual to create an estoppel by judgment, notwithstanding the well-recognized rule, contended for by counsel for plaintiffs in error, that judgments of courts of record having jurisdiction over the subject-matter and the parties are binding on the parties and their privies in estate, and cannot be attacked in a collateral proceeding. The Indian who consented to the stipulation for submission to the judgment of the court for such purpose was not a person sui juris. The submission required, as the very basis of its recognition, the acquiescence and consent of the Indian thereto. The effect of the act of Congress, under which the patent was granted, was to deny to the Indian the exercise of any consent whereby the restriction upon the power of alienation could be removed. If the Indian could create no estoppel against himself or herself by deed of conveyance, how could he or she create an estoppel, by consenting to a judgment as the basis of an estoppel, effectual to alienate the land, in direct contravention of the act of Congress? The allottees of these lands, during the probationary period of 25 years, were under as much disability to alienate them by contract, or deed, or voluntary submission to a court, as if they had been under the disability of coverture or minority. The disability of the minor to do these things is imposed by the common law. The disability of these Indians is imposed by statute. It must, therefore, logically and necessarily follow that the record and judgment of a court, disclosing on their face that the disqualified Indian was entering into an agreement for submission of the question of his right to dispose of these lands, was in no wise different from such a proceeding participated in by a minor infant. It is a wholesome rule of law that a party may not accomplish by indirection that which he could not do directly. That

which Goodrum undertook to do by stipulation with this Indian could not become the subject of a controversy to be submitted to the jurisdiction of the United States Court, so as to build a foundation to support the plea of res adjudicata. In White v. Clark, 111 Cal. 164, 44 Pac. 164, under a statute like that of Arkansas, providing for submission to the court, without pleading, of a matter in controversy between the parties, it was held that a mere statement that the party claimed said land as a homestead fell short of conferring upon him any interest in the land or right to question the title; that whether the party would have a right to enter the land as a homestead under the United States statutes, or that the patent under which the defendant claimed title was void, could not be the subject of a civil action in the courts of the state. This evidently was for the reason that as the homestead act confers the right upon the homesteader of occupancy, upon which no other party can be entitled to enter, and which cannot be conveyed by the homesteader during the period of improvement, it could not be the subject of a real controversy, in contemplation of the statute, and therefore any judgment predicated upon such a controversy could be of no value.

"It is transparent on the face of the proceedings in the United States Court, resulting in the judgment relied upon by Goodrum as an estoppel, that it was not an honest proceeding. If Goodrum earnestly desired a judicial determination of the power of the Indian to convey the land in question, why did the parties content themselves with the conclusion of the United States Court? Naturally enough, they would have at least sought the judgment of the appellate court in the Indian Territory. Relying, as Goodrum's answer does, upon the deed executed to him by Ollie Medicine, made pursuant to said decree of the territorial court, the situation presents an anachronism, and an anomaly in law. The Congress, representing the sovereignty of the nation, created the estate, affixing to it the quality of inalienability for the period of 25 years. Without the creator's consent, the grantee was without the power to convey. Where and how did the territorial court acquire such jurisdictional power? The court itself was but the creature of Congress. It was not invested with the power to confer upon this Indian authority to convey away her allotted lands which the sovereign government, creating the estate and the court, declare shall not be done for 25 years after allotment."

The court winds up on the plea of "res adjudicata" with the following:

"It should be understood, once for all, that no scheme or device, however ingenious or plausible, concocted by any person, can avail to divest the Indians of the title to their allotted lands within the period of limitation prescribed by Congress."

This case has been the foundation of most of the rulings since with reference to the power of courts by judicial decision to interfere with the plain provisions of legislative enactment. As applied to this case, the claimant could do nothing without the consent of the administrative board created by the Legislature. The action of the administrative board was binding on the claimant, and it should in all cases be binding on the insurance carrier when it is binding on the claimant. The statute is plain to that effect.

It is further plain in this section that the Industrial Commission does not have to assign any reason or file any motion in order to reopen any award, and it is further plain that a plea of "res adjudicata," without a settlement, avails not under the plain provisions of this law, which undertakes to insure to the laborer compensation for an injury.

From the statement of the case, set out in the opinion, it is apparent that claimant legally was entitled to compensation for two things: (1) Temporary total disability for 43 weeks; (2) permanent partial disability to left arm amounting to one-third, for $83\frac{1}{3}$ weeks. It is further evident that, regardless of names and times, they paid him for only 83 1/3 weeks, and that they owe him for 43 weeks yet, and that the only tender made is a plea of "res adjudicata."

It is further evident that the Industrial Commission, under section 7296, C. O. S. 1921, in order to review an award, would not be required to make application to itself or make a motion of any kind. If that was the only applicable provision, it is clear that the term "on the ground of a change in condition" does not limit the power of the Commission, which had full supervision of the matter independent of section 7325, prescribing that its jurisdiction should be continuing in each case. The grammatical analysis of section 7296 clearly indicates that the Commission's authority is not thereby limited, but that either party, if there has been a change in condition, may bring the matter before the Commission and get its judgment as to whether there should be a change in the award.

The next section, properly examined, is convincing. It makes the award made by the Commission "binding on the parties" only, not on the Commission. The language is, "The award or decision of the Commission

shall be final and conclusive upon all questions within its jurisdiction between the parties." This is plain. The parties at this time are the claimant, the carrier, and the employer. In no sense would it be rationally claimed that "between the parties" includes the Commission. The latter portion of section 7297 shows where for the first time the Industrial Commission becomes a party, i. e., to the proceedings in the Supreme Court to modify its award, when the Attorney General is required to defend it. If one will discard pride of opinion, and examine section 14 of the original act, and sections 15 and 16 of the original act, the sections being 7298 and 7299, and 7300, C. O. S. 1921, he will find that "between the parties" was used advisedly. In the event the compensation was not paid, 7300 applied, making it a liquidated claim for damages, and prescribing a 50 per cent. penalty, empowering the Commission to compute into a lump sum and to bring an action in court, penalty to go to paying expenses of the Commission. Here, of course, the award declared on was binding on the parties. Applying the ordinary rule of grammatical construction, the term "on change of condition" is applicable only to the application made to the Commission, and applies to the action of the parties, not the Commission. Black, in his Interpretation of Laws, paragraph 73, in the black letter text, sets out the grammatical rule, as follows:

"73. As a general rule, relative, qualifying, or limiting words or clauses in a statute are to be referred to the next preceding antecedent, unless the context, or the evident meaning of the enactment, requires a different construction."

The text is as follows:

"This grammatical rule is of use only in cases where there is ambiguity or doubt on the face of the statute. If there is difficulty in interpreting the qualifying words of a sentence. the rule is to apply the relatives 'which,' 'such,' 'said,' and other relative or limiting words or phrases, to such terms or clauses as shall immediately precede them, rather than to such as are more remote."

Akin to this is another rule, No. 74, largely a context application; we find the following:

"74. Where a sentence in a statute contains several antecedents and several consequents, they are to be read distributively; that is to say, each phrase or expression is to be referred to its appropriate object."

Using this, and applying it, and making the inquiry as to what is meant in referring

to the power of the Commission to amend an award, would it be necessary for the Commission to file a motion to reopen, or make application to reopen? Most clearly not. Taking the subsequent limitation, "between the parties" at a time when the Commission was not a party, and then the award of the Commission being a liquidated claim, it is clear that these sections were never intended as a limitation upon the power of the Commission, much less a limitation upon the subsequent special designation and definition of its power contained in article 4, creating the Commission and defining its jurisdiction and power. Section 14 is as follows:

"Section 14. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modification or change with respect to former findings or orders relating thereto, as in its opinion may be just, including the right to require physical examination as provided for in section 9 of article 2 of this act, and subject to the same penalties for refusal."

The intent to get away from the troubles of court procedure is obvious in section 2 of art. 6. That section is as follows:

"Section 2. The right of action to recover damages for personal injuries not resulting in death arising and occurring in hazardous employments as herein defined, except the right of action reserved to the State Industrial Commission for the benefit of an injured employee in section 2 of article 2 of this act, is hereby abrogated, and all jurisdiction of the courts of this state over such causes, except as to the cause reserved to the State Industrial Commission for the benefit of injured employees in section 2 of article 2 of this act, is hereby abolished."

The act went into operation, and from time to time the Legislature, observing its workings, amended it. Recognizing that it was merely an administrative board, the Legislature required the Commissioners to give bond for the faithful performance of duty. Desiring practical administration, and to avoid court delays, it did not require the Commission to be lawyers, and did not give to the board the power to make findings carrying "res adjudicata" qualities as against future consideration by it as an administrative board.

The Legislature wanted to end the malingerer's power, and it wanted to secure to the injured workman a chance to secure compensation for disability to labor, no matter how late in development, provided the matter was brought to the attention of the Commission within a year. However, after eight years of operation, it was found de-

sirable to permit a final settlement, based on an adjudication that was final, though made by an administrative board. So in 1923, for the first time was this power conferred. It was special, and also the procedure was prescribed. The amended section, conferring this jurisdiction, is as follows:

"Sec. 7325. Amendment of Orders—Continuing Jurisdiction. The power and jurisdiction of the Commission over each case shall be continuing, and it may from time to time make such modifications or changes with respect to former findings or orders, relating thereto, if, in its opinion, it may be justified, including the right to require physical examinations as provided for in section 7293, and subject to the penalties for refusal; provided, that upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require. The Commission shall have authority to consider such petition and to dismiss the same without a hearing if, in its judgment, the same should not be set for hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly, and the Commission may make an award that shall be final as to the rights of all parties to said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same. If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed. The same right of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission, provided there shall be no appeals allowed from an order of the Commission dismissing such petition as provided in this section."

This is a clear legislative construction. It most clearly shows that in the estimation of the legislative branch, the power now conferred did not exist by virtue of any previous legislation. See Black on Interpretation of Laws, rule 95, which is as follows:

"95. A construction put upon a statute by the Legislature itself, by a subsequent act or resolution, cannot control the judgment of the courts; but it is entitled to weight and consideration in case of doubt or obscurity."

See, also, rule 106, as follows:

"106. It is presumed that the Legislature does not intend to make unnecessary changes in the pre-existing body of law. The construction of a statute will therefore be such as to avoid any change in the prior laws beyond what is necessary to effect the specific purpose of the act in question."

Independent of this, however, the language is plain. It is further plain that the decision as announced renders unmeaning the provision defining the power of the Commission and the effect of its orders. Language could not be plainer.

By this last legislation, jurisdiction was first conferred upon the Commission to make an order final, so that it could not modify. In addition to that, the carrier must pay in something more tangible than a commission order converted into "res adjudicata." A review of the decisions relied on shows that they trace to Ward v. Beatrice Creamery Company, above. Tulsa St. Ry. Co. v. State Industrial Commission, 105 Okla. 265, 232 Pac. 418, did not recognize that the provision conferring continuing jurisdiction existed, and went off on confession of error, the confessor giving no special reason. The syllabus goes further than the opinion. Bedford-Carthage Stone Co. v. Industrial Commission, 119 Okla. 231, 249 Pac. 706, refers to and relies on Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 Pac. 163, cited in the Beatrice Creamery Co. Case, which was a Commissioner's decision, holding that the continuing jurisdiction, and power to amend or modify any order, was confined to an award when conditions changed only, though section 7325 was not noticed or taken into the account. The statement carries the refutation. The case of Liddell v. State Industrial Commission, 126 Okla. 235, 259 Pac. 265, if it holds anything applicable, holds that the power to modify in that case came from section 7325, defining its powers and jurisdiction. The decision in K. D. Oil Company v. Datel et al., 145 Okla. 264, 292 Pac. 564, specially states that proceeding was not had under section 7325. See concluding paragraph.

Olentine v. Calloway, 147 Okla. 137, 295 Pac. 608, is an opinion written by the author

of the present one, and concurred in by a divided court. It is on the same line. It holds that if the insurance company can get in the first application, the decision in its favor, there is no continuing jurisdiction, but if it is in favor of the claimant, there is continuing jurisdiction, and it is based on Ward v. Beatrice Creamery Company. Estoppel by "res adjudicata" should apply to all parties, regardless of who gets the decision.

As here applied, a claimant is deprived of what everybody must concede was his due, under the law. The decision is clearly based on the proposition that, when application is made to the Commission to establish the injury, as well as to establish the extent of it, if for any reason relief is denied the claimant, that is the end of it, unless proceeding to review is brought. What the claimant would appeal from under those conditions is not exactly clear under the law regulating the subject of review by this court. On the other hand, if the facts found are against the carrier, and it is found that the carrier is liable, later on the carrier can without proceedings in error show that the claimant is no longer hurt, and get rid of the liability. Such a rule is unjust, unequal in operation, forbidden by common fairness. On the other hand, by allowing section 7325 to mean just what it says, does injustice to nobody. Under it, as amended, if the carrier wants to get rid of the liability by filing a joint petition and getting the amount due found by the Commission, it can do so, otherwise not.

Two thousand years ago, the Master Preceptor said, "The laborer is worthy of his hire." The Supreme Court of the United States holds that Laborer's Compensation is a part of the hire. See case of State Industrial Commission v. Nordenhold Corp., 66 L. Ed. (U. S.) 935, where, in discussing the applicability of the state statute, the court says at page 936:

"The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee be injured, will pay to him a certain sum to compensate for the injuries sustained, or, if death results, a certain sum to dependents. These payments are made irrespective of whether or not the employer was guilty of wrong-doing. It is a part of the compensation agreed to be paid for services rendered in the course of the employment."

This opinion is therefore filed as a protest and a dissent, believing that if the doctrine announced in the majority opinion is adhered to, it will result in a nullification in a large measure of the act giving the laborer his compensation.