**AMERICAN OIL & REFINING CO. et al.
v. KINCANNON et al.**

No. 22190.   Opinion Filed Oct. 13, 1931.

Rehearing Denied Jan. 12, 1932.

James C. Cheek and Albert L McRill, for petitioners.

J. Berry King, Atty. Gen., Robert D. Crowe, Asst. Atty. Gen., for respondents.

RILEY, J.   This is an original proceeding in this court to review an award of compensation in favor of respondent J. B. Kincannon and against petitioner.

It appears that on February 25, 1925, respondent sustained an accidental injury growing out of and in the course of his employment with petitioner herein, American Oil & Refining Company.   Thereafter, on June 19, 1925, he filed his first notice of injury and claim for compensation with the State Industrial Commission, in which the

nature and extent of his injury was stated as "crushed second finger and mashed left hand." It was further stated therein that he had "lost second finger from index and use of left hand," and also "finger was amputated and my left hand is useless for life."

Hearing was had upon the claim and on October 26, 1926, the Commission made its findings, No. 2 of which was:

"(2) That claimant has lost the index finger of left hand by amputation as a result of said injury, but that he has no permanent disability to the hand or other fingers."

Compensation was awarded fixed at $18 per week for a period of 35 weeks, or $630. Thereafter, on November 4, 1926, the a'tention of the Commission having been called to the error in its findings and award, wherein it had found that the claimant had lost the index finger of his left hand, whereas the claim and evidence showed the loss of the second finger, finding No. 2 was stricken, and the following finding substituted therefor:

"That as a result of said accidental injury the claimant had lost the middle finger of left hand by amputation and that he has no permanent disability to the hand or other fingers."

Compensation was accordingly reduced from 35 to 30 weeks, at $18 per week, or from $630 to $540. Notice of the original award was sent to the parties on October 20, 1926, and the amended or corrected award on November 4, 1926.

Thereafter, and more than 30 days after the notice of original award was sent, Kincannon commenced proceedings in this court to review the award. The proceeding was dismissed because not commenced within 30 days of the date of notice of the original award. 126 Okla. 84, 258 P. 741.

In the opinion it was said:

"The petitioner herein complains only of that part of the order of the Commission wherein they find 'that he has no permanent disability to the hand or other fingers,' and his brief filed in support thereof admits that it was the second finger on the left hand that was amputated and makes no complaint of the order of November 4, 1926, changing the finding of fact to show that it was the second finger lost instead of the index finger, or the change in the amount of the compensation allowed."

And:

"The action which the Commission took in thus making the record speak the truth could in no wise injure or in any manner impair or affect the right of the petitioner, since he seeks a review only of that part of the award that denied compensation for disability to the hand and other finger."

On August 18, 1927, upon consideration of the mandate from this court, the Commission ordered same spread of record and further ordered:

"* * * That the order heretofore made in this cause on the 16th day of October, 1926, as amended on the 4th day of November, 1926, be and the same hereby remains in full force and effect."

Thereafter, on January 24, 1931, the Commission issued notice of hearing, stating:

"A hearing in this case has been requested by some of the parties interested on the following grounds: Motion of claimant to determine extent of disability."

This notice set the hearing for February 6, 1931, and contained a notation thereon as follows: "Copy of motion to insurance carrier."

Hearing was had pursuant to the notice, and on March 2, 1931, the Commission made its finding as to injury having been sustained by accident arising out of and in the course of his employment, the injury consisting of crushed finger and mashed left hand, and that the average daily wage of claimant was $6, and:

"(3) That the claimant as result of said accidental injury has lost the index finger of his left hand as result of said injury, and that he has permanent disability to the left hand."

Findings 4 and 5 were as to the facts of the former award having been made and corrected and as to the appeal therefrom by claimant and the dismissal of said appeal and the order made upon the return of the mandate affirming the former award in the sum of $540.

The sixth finding is:

"(6) That on motion of claimant, to reopen his case, a further hearing was granted, and from medical testimony presented and the Commission finds from said testimony that the claimant has a 50 per cent. permanent partial disability to his left hand by reason of the aforementioned accidental injury."

The order and award concludes:

"The Commission is of the opinion: That upon consideration of the foregoing facts, that the claimant is entitled to permanent partial disability to his left hand of 50 per cent., computed at the rate of $18 for 100 weeks amounts to $1,800, from which is deducted the former award of $540, leaves

a balance due claimant of $1,260, to be paid in lump sum.

"It is therefore ordered, that within 15 days from this date, the respondent or insurance carrier, pay the claimant herein the sum of $1,260, the balance due after deducting $540, heretofore paid on a former order, from 50 per cent. disability to his left hand amounting to $1,800, as result of aforementioned accidental injury."

To review this finding and award this proceeding was commenced.

The record does not contain any motion or other application filed by the claimant for the hearing; the notice merely stating that the hearing would be upon the motion of claimant to determine extent of disability. Both parties in the briefs appear to concede that there was no claim made of a change of condition of claimant's hand between the date of the award made October 16, 1926, and the time of the issuing of the notice of hearing January 24, 1931.

The position of petitioner is that the award of the Industrial Commission made in 1926 became final upon the dismissal of the appeal therefrom, and the expiration of 30 days thereafter; that after an award has thus become final it can only be opened upon the ground of a change in condition. It is asserted that no application or motion was filed alleging change of condition, and also that the findings Nos. 3 and 5 are erroneous and not sustained by the evidence.

Respondent apparently relies upon the provisions of section 7325, C. O. S. 1921, and cites cases which he contends hold that the Industrial Commission has continuing jurisdiction in each case irrespective of any change of condition of the claimant. He states in his brief:

"Therefore, since the Industrial Commission does have continuing jurisdiction, even though a former award has been made and become final, it has jurisdiction in this case to make the award for 50 per cent. permanent partial disability to the left hand, notwithstanding a former order had been made allowing him compensation only for the loss of the second finger."

He makes no contention that the motion for second hearing alleged a change of condition. or that there is evidence in the record showing a change of condition between the dates of the first award in 1926 and the last award March 2, 1931. If he did make the latter contention, it could not be upheld. No witness testified as to such change and respondent himself testified:

"By the Court: Q. Now. Mr. Kincannon, was your hand in that condition at both of the hearings before the Commission? A.

Yes, sir. Q. The fingers were stiff and ankylosed? A. Yes, sir. Q. And on these hearings was your hand exhibited as an exhibit before the Commission at the time of the hearing? A. Yes, sir. Q. And you had doctors to testify at that time? A. Yes, sir. Q. What doctors? A. Doctor Lee and Doctor Bolend."

And:

"Q. And you never received any money only for the loss of the second finger of your left hand? A. Yes, sir. Q. And you say your hand has stayed in that condition like it is now, ever since this alleged injury? A. Yes, sir."

He also testified that the reason for the appeal from the first award was the ruling of the Commission to the effect that he had no permanent disability of the hand or other fingers of the left hand.

There can be no doubt but that the question of injury to claimant's hand, aside from the loss of the finger, was before the Commission in the first hearing, and that the Commission found against claimant as to such alleged injury. From the opinion dismissing proceedings for review of said award, this seems to have been the only ground upon which claimant based his proceedings in this court to review. The only question then presented is whether the findings and award made by the Commission in 1926, from which proceedings to review were instituted and dismissed because they were commenced in time, became final and binding so as to preclude any subsequent award for the same alleged injury in the absence of a showing of change in condition arising subsequent to the first award and caused by the original accidental injury, or whether, under section 7325, C. O. S. 1921, the jurisdiction of the State Industrial Commission over the case is continuing to the extent of conferring jurisdiction and authority to reopen the case and award compensation for alleged injury to the hand notwithstanding the former finding and order of the Commission and without any showing of any change of condition.

The applicable provisions of said section, as amended by chapter 61, S. L. 1923, are:

"The power and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto if, in its opinion, it may be justified, including the right to require physical examinations as provided for in section 7293, and subject to the same penalties for refusal; provided, 'hat upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction

to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition."

Whether this section is to be considered as standing alone or in connection with other sections has been before the court a number of times, and it seems now to be well settled that said section must be considered in connection with other sections of the act.

In Marland Production Co. v. Hogan, 146 Okla. 220, 294 P. 115, it was held:

"When sections 7296, 7297, and 7325, C. O. S. 1921, are considered together, it must be held that it was the legislative intent that the Commission have a continuing power and jurisdiction to review its award on the ground of a change in conditions only, and, except for a change in conditions, the award is final and conclusive upon all questions within its jurisdiction unless suit is commenced in this court within 30 days to review the award or decision."

In Roxana Petroleum Corp. v. Hornberger, 150 Okla. 257, 1 P. (2d) 393, it was held that sections 7296, 7297, 7325, and 7318, C. O. S. 1921, must be considered together, and thus considering said sections it was held:

"Where an award has been made by the Commission awarding compensation, and said award becomes final, then there must be a showing that there has been a change of condition since the award was rendered before the Commission acquires jurisdiction to make an additional award of compensation."

And:

"Where the Commission renders an award in a case of March 4, 1929, and said award becomes final, the Commission would not have jurisdiction to reopen said cause and order further compensation on May 17, 1930, without a showing that there had been a change of conditions since the former award."

In Southern Fuel Co. v. St. Indus. Commission, 141 Okla. 127, 285 P. 35, it was held:

"Under the Workmen's Compensation Law of the state, where an application to reopen an award for compensation for an accidental injury is filed after the expiration of 30 days within which an action may be commenced in the Supreme Court, the only question presented is whether or not there has been a change in condition of the claimant since the making of the original award: and where the Industrial Commission refused to set aside the original award, and there is any competent evidence to support the refusal of the same, it will not be disturbed by this court."

The Attorney General appears for the respondent and ci es and relies largely upon Oklahoma Nat. Corp. v. Ford, 150 Okla. 83, 300 P. 753, and cases therein cited.

The first paragraph of the syllabus in the Ford Case clearly recognizes the rule limiting the authority to change or modify an award on the ground of a change in condition. Said paragraph reads:

"The power and jurisdiction of the Industrial Commission over each case is continuing, and in the exercise of that power and jurisdiction, it may from time to time, on the ground of a change of condition arising out of the same injury, make such modification or change with respect to a former finding or order as in its opinion may be just, and the jurisdiction of the Commission, after having once vested, over a claim, being continuing, it is authorized to make such orders as in its judgment may meet the ends of justice, either upon its own motion or upon the motion of any interested party to rehear, vacate, or modify."

Furthermore, Mr. Justice Clark, speaking for the court, in the body of the opinion, says:

"In this case there is sufficient evidence to justify the finding of a change in condition and that the same arose out of the original injury."

The first case cited therein, Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 P. 750, recognizes the same rule, as the holding therein is:

"* * * The Commission may at any time, upon its own motion or upon the application of any party in interest, on the ground of a change in conditions, review any award, and on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the act."

The next case cited, Sun Coal Co. v. St. Indus. Comm., 84 Okla. 164, 203 P. 1042, holds:

"The power and jurisdiction of the State Industrial Commission under the Workmen's Compensation Law (ch. 246, S. L. 1915) over each case submitted to it is continuing, and the Commission may. from time to time, make such modification or change of its former findings or orders relating thereto as, in its opinion, may be just, and under section 12, art. 2, of said act, the Commission may at any time, upon its own motion or upon the application of any party in interest, on the ground of a change in conditions, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded subject to the maximum or minimum provided in the act."

It will be observed that in that case section 12, art. 2, of the Workmen's Compensation Act (section 7296, C. O. S. 1921) and section 14, art. 4, of the Act (section 7325, C. O. S. 1921) are considered together.

Wilkerson v. Devonian Oil Co., 136 Okla. 18, 275 P. 1053, cited in the Ford Case, supra, is a case wherein the order of the Industrial Commission denying a motion for additional compensation upon the sole ground that the evidence was wholly insufficient to show a change of condition was affirmed.

Wilkerson v. Devonian Oil Co., 114 Okla. 84, 242 P. 531, is also cited in the Ford Case. supra, but the only question there involved was the power of the Commission to vacate or set aside an order or award upon motion filed by the employer within ten days under Rule 30, promulgated by the State Industrial Commission.

United States F. & G. Co. v. Harrison, 125 Okla. 90, 256 P. 753, is the only case cited in the Ford Case, supra, where the ground set up for an additional award was not that of a change of condition, but there the application for modification of the original award was made within 30 days and before expiration of the time allowed for proceedings to review, though not within the ten days provided by Rule 30. It was there held within the power of the Commission to make the additional award under section 7325, C. O. S. 1921, and that the case did not come within the provisions of section 7296, C. O. S. 1921, requiring a showing of change of condition.

Except for the Harrison Case, supra, all the cases cited by Mr. Justice Clark in Oklahoma Natural Gas Corp. v. Ford, recognized the rule contended for by petitioner herein. that in order to invoke the continued jurisdiction of the State Industrial Commission so as to justify an additional award as was done in the instant case, there must be a showing of a change of condition arising after the former award and attributable to the original accidental injury. Such is, in effect, the holding in the Ford Case, supra.

The evidence wholly failing to show such change of condition, but on the contrary affirmatively showing that there was no such change, the order and award of the State Industrial Commission must be, and is hereby, reversed and the cause is remanded, with directions to set aside the award so made and overrule the motion for additional compensation.

CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and HEFNER and KORNEGAY, JJ., dissent.

KORNEGAY, J. (dissenting). I dissent from the majority opinion in this case. By applying the doctrine of "res adjudicata," an injured worker, whose hand had in large measure been lost as a result of an industrial accident, is held not to be entitled to the compensation provided by law. It appears from the statement in the case that a former Commission did not allow compensation at the first hearing for a hand injury, though the claim was made in ample time, and it was conceded that the injury to the hand had taken place while in the employ of the petitioner.

The order of the Industrial Commission, as originally rendered, can be found in the record at page 11. and is as follows:

"Now, on this the 16th day of October, 1926, the State Industrial Commission being regularly in session, this cause comes on in its regular order to be considered pursuant to a hearing held in Oklahoma City, Okla., on October 8, 1926, before Commissioner H. C. Myers, to take testimony of Dr. Floyd J. Bolend, the claimant appearing in person and being represented by John A. Maupin, and the respondent and insurance carrier being represented by A. L. McRill, having examined all the records on file in this case, and being otherwise well advised in the premises, finds:

"1. That the claimant sustained an accidental injury arising out of and in the course of his employment with the respondent herein on February 25, 1925. injury being to the left hand.

"2. That claimant has lost the index finger of left hand by amputation as a result of said injury. but that he has no permanent disability to the hand or other fingers.

"3. That the claimant's average wages at the time of said injury were $6 per day.

"The Commission is therefore of the opinion: That by reason of the aforesaid facts, the claimant is entitled to compensation at the rate of $18 per week for a period of 35 weeks for the loss of the left index finger, or a total of $630.

"It is therefore ordered: That within ten days from this date. the respondent or insurance carrier herein pay to claimant the sum of $630 less any sums heretofore paid, in full and final settlement under this award, and also to pay all medical expenses incurred by claimant as a result of said injury.

"It is further ordered: That within 30 days from this date, the respondent or insurance carrier herein file with the Commission proper receipt or other report evi-

dencing compliance with the terms of this order."

On the 5th of November, 1926, there appears another order, as follows:

"Now, on this the 4th day of November, 1926, this cause comes on to be considered pursuant to the attention of the Commission being called to an error made in the order heretofore made and entered in this cause on the 16th day of October, 1926, and the Commission, having examined the record on file in this cause and being otherwise well advised in the premises, is of the opinion: That finding of fact number two of said order should be stricken, and in lieu thereof, the following:

"That, as a result of said accidental injury, the claimant has lost the middle finger of left hand by amputation and that he has no permanent disability to the hand or other fingers.

"That the opinion of the Commission should be stricken from said order, and in lieu thereof, the following:

"The Commission is therefore of the opinion: By reason of the aforesaid facts, the claimant is entitled to compensation at the rate of $18 per week for a period of 30 weeks for the loss of the left middle finger, or a total of $540.

"And that in said order, second paragraph of second page, the figures '$630' should be stricken and the figures '$540' inserted in lieu thereof.

"It is therefore ordered: That the order heretofore made and entered in this cause of the 16th day of October, 1926, be amended to conform to the above and that in every other respect the same be and remain in full force and effect."

The next order appears to be on page 17 of the transcript, and is as follows:

"Now, on this 18th day of August, 1927, the State Industrial Commission being regularly in session, the above cause comes on for consideration on mandate of the Supreme Court of the state of Oklahoma, and it appearing that on the 26th day of July, 1927. the Supreme Court of the state of Oklahoma rendered an opinion in the above-entitled cause. dismissing the action upon appeal from the Industrial Commission, and commanded such dismissal to show of record.

"It is therefore ordered: That said dismissal ordered by the Supreme Court of the state of Oklahoma be and is hereby spread of record. that the order heretofore made in this cause on the 16th day of October, 1926. as amended on the 4th day of November, 1926, be and the same hereby remains in full force and effect."

On January 24. 1931, notice was sent out of a hearing on February 6, 1931. to determine the extent of disability, which was had later. The order on such hearing is as follows:

"Now, on this 2nd day of March, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered, in pursuance to a hearing held at Oklahoma City, Oklahoma, February 13, 1931, being continued from the Oklahoma City docket of February 6, 1931, to take further testimony, before Inspector H. O. Matchett, duly assigned to conduct said hearing, at which hearing the claimant appeared in person and without counsel, the respondent being represented by J. V. Anderson; and the Commission, after reviewing the testimony taken at said hearing, and all reports on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"1. That on the 25th day of February, 1925, the claimant, J. B. Kincannon, was in the employ of said respondent, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury, arising out of and in the course of his employment, consisting of a crushed second finger and mashed left hand.

"2. That at the time of said accidental injury, the average daily wage of the claimant was $6 per day.

"3. That the claimant as result of said accidental injury has lost the index finger of his left hand as result of said injury. and that he has permanent disability to the left hand.

"4. That an order was made in this cause on the 16th day of October, 1926, awarding claimant 35 weeks for the injured finger, the sum of $630, said order being corrected on November 4, 1926, to read 30 weeks at the rate of $18 per week, or an amount of $540, which has heretofore been paid.

"5. That by reason of the foregoing award of $540. respondent and insurance carrier appealed the said cause to the Supreme Court, and the Supreme Court rendered its opinion July 26. 1927. dismissing the action on appeal from the Industrial Commission on mandate from the Supreme Court issued its order of August 18. 1927, reaffirming its former order of $540.

"6. That on motion of claimant to reopen his case, a further hearing was granted and from medical testimony presented at and the Commission finds from said testimony that the claimant has a 50 per cent. permanent partial disability to his left hand by reason of the aforementioned accidental injury.

"The Commission is of the opinion: That upon consideration of the foregoing facts, that the claimant is entitled to permanent

partial disability to his left hand of 50 per cent., computed at the rate of $18 for 100 weeks amounts to $1,800 from which is deducted the former award of $540, leaves a balance due claimant of $1,260, to be paid in lump sum.

"It is therefore ordered: That within 15 days from this date, the respondent or insurance carrier pay the claimant herein, the sum of $1,260, the balance due after deducting $540 heretofore paid on a former order, from 50 per cent. disability to his left hand amounting to $1,800, as result of aforementioned accidental injury.

"It is further ordered: That within 30 days from this date, the respondent or its insurance carrier file with the Commission receipt or other proper report evidencing compliance with this order."

This order is by the majority reversed, and directions are given the Industrial Commission to deny compensation for the results of the injury to the hand that had not fully developed when the claimant was first before the Industrial Commission.

In the syllabus, division No. 1, it is announced that the Legislature had prescribed that the continuing jurisdiction conferred upon the Commission in each case, to modify any award according to its sense of justice, should be limited to one instance, namely, that of change of physical condition only. As enacted in 1915, the section defining the authority of the Commission to reopen was worded differently from what it now is. As originally enacted, it is carried forward in C. O. S. 1921, section 7325, as follows:

"7325. Amendment of orders—continuing jurisdiction. The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modification or change with respect to former findings or orders relating thereto, as in its opinion may be just, including the right to require physical examination as provided for in section 9, of article 2 of this act (7293), and subject to the same penalties for refusal."

After working under this section for eight years, the Legislature, in 1923, modified it by substituting for the words, "as in its opinion may be just," the words, "if in its opinion it may be justified," but added a proviso for the first time, allowing the Commission to finally settle the matter, so that it would no longer have authority to reopen. The amended section is as follows:

"Section 13. Section 7325, C. O. S. 1921, is hereby amended to read as follows:

" 'Section 7325. The power and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders relating thereto if, in its opinion, it may be justified, including the right to require physical examinations as provided for in section 7293, and subject to the same penalties for refusal; Provided, that upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require. The Commission shall have authority to consider such petition and to dismiss the same without a hearing if in its judgment the same should not be set for hearing; the expenses of such hearing or investigation, including necessary medical examinations, shall be paid by the employer or insurance carrier, and such expenses may be included in the final award. If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly, and the Commission may make an award that shall be final as to the rights of all parties of said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same. If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed. The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission; provided, there shall be no appeal allowed from an order of the Commission dismissing such petition as provided in this section."

Everybody seems to have acquiesced in the validity of the act as modified, and in the idea that the Legislature had a right to confer the jurisdiction on the Industrial Commission to make an award that was "final." In fact, the record in this case shows most conclusively that the Commission, as constituted in the year 1925, on November 4th, applied the doctrine of "continuing jurisdiction" by substituting for the order of October 16th an order of November 4, 1925, modifying its former award, and reducing the compensation of the workman from $630 to $540, and finding that it had made a mistake in the finger that was amputated, and changing its findings as to finger loss from the index to the middle finger. Most clearly, there was no change

in physical condition. It was a case of mistake in the first award, corrected by a second award, a clear exercise of the power conferred under section 7325. The claimant brought the matter to the attention of this court. This court, in a "Per Curiam" opinion, said at page 85:

"The record in this case discloses that a copy of the award of said Commission made on the 16th day of October, 1926, was sent to the parties affected thereby on the 20th day of October, 1926, and that a copy of the order of November 4, 1926, was sent to the parties affected on the 5th day of November, 1926. The order of the said Commission made on the 4th day of November, 1926, in no way changed that part of the award of October 16, 1926, of which the petitioner complains.

"The petitioner knew when he received the copy of the award of October 16, 1926, that a mistake had been made, and that he was entitled to compensation for the loss of the middle finger as prescribed by the Workman's Compensation Law, and not for the loss of the index finger, which he did not lose.

"The only effect of the order of November 4, 1926, which was not an award or decision, was to correct the mistake inadvertently made, and did not extend the time in which to file an action in this court for review. The action which the Commission took in thus making the record speak the truth could in no wise injure or in any manner impair or affect the right of the petitioner, since he seeks a review only of that part of the award that denied compensation for disability to the hand and other finger. The time in which to bring an action in this court to review the award of October 16, 1926, expired on the 19th day of November, 1926, 30 days after a copy of said award was sent to the petitioner on October 20, 1926. The action in this court, not having been commenced within that time required by law, is hereby dismissed."

A remarkable deduction is the one about the time of calling this court's attention to what had gone on before the Industrial Commission, as it is clear that the award of November 4th was different in amount of payment, as well as in the finger cut off. Under the statute, as well as on general principle, this court had jurisdiction in a limited degree, but it declined to exercise it, but by a "Per Curiam" opinion dismissed the proceedings on what appears to me an untenable ground, viz., that claimant's time to begin proceedings to review the "substituted award" dated, not from November 4th, the date of its making, but from October 16th the date of the award it took the place of. Clearly, no "res adjudicata" arose out of this, so far as the merits are concerned

and so far as this court is concerned. However, that does not dispose of the matter, as the contention is made that "res adjudicata" was born in this case in the year 1926, October 16th, as a result of the action of the Commission on that day.

An examination of the original record, when the case was before the Supreme Court and was dismissed because not brought to the attention of the court in time, shows that by far the preponderance of the evidence in the case was that, as a result of the injury received to the left hand and as a result of treatment in the Ada hospital, at the instance of the carrier, there were certain hypodermics given to the patient in the right arm, and as a result thereof some abscesses formed therein, resulting in a condition in the right arm that one would naturally think would result in permanent harm. There seems to have been no dispute of this part of it. As to the injury to the hand, there was practically no dispute as to the injury, but there was the opinion of some doctors as to its probable consequence.

The great weight of the testimony of the doctors was to the effect that there would be, in all likelihood, a permanent disability to the hand, though one doctor, who apparently was the examiner on behalf of the insurance carrier, under date of December 9, 1925, reported to the insurance carrier as follows:

"He now has four superficial incision scars above the right elbow which he says were the result of incisions to drain the abscesses. These scars are superficial and are not in any way disabling.

"Conclusions: He has total loss of the second finger of the left hand, it having been amputated at the proximal joint. The left hand is in no way damaged or diseased. The thumb and remaining fingers are in no way damaged or diseased. He has not yet fully accustomed his first and third fingers to the loss of the second. I think he is making very little effort to do this, although he is working regularly at $6 per day which he says was the wage he was making at the time he was hurt.

"Very truly yours,
"(Signed) S. R. Cunningham."

The other doctors were more liberal. Dr. Bolend made a report to the Industrial Commission, and at page 45, he reports:

"Middle finger of left hand was mashed. There were no open wounds on any other part of the hand. He was taken to Dr. Cummings at Ada, dressed and treated for about a month, then came to Oklahoma City, and finger was amputated by Dr. A. L. Blesh in March, 1925. Hand has been previously

lanced on either side of finger and on palmar surface on account of infection."

On page 46, under the head of "Examination," he says:

"Middle finger left hand amputated at metacarpal phalangeal joint; also two small scars on dorsal surface of hand; scar 1½" long on palmar surface from base of stump extending toward wrist. The right wrist is 7" in circumference, the left wrist the same. Forearm, right 8½" left same. In addition on right arm there is a scar 1½" long at outside of arm 6" above elbow, one 1" on the triceps and one 1½" on biceps; one on external surface just above external condyle about 2" long. These were caused by an infection in the right arm four or five days after entering the hospital for the first time. Patient says serum was administered in the right arm at the time of opening the hand and the result an infection followed. These scars and one in particular, are extremely sensitive to touch, but do not interfere in any way with the function of the right arm or hand."

His conclusion, on page 47, is as follows:

"Functionally, right arm is perfect; on the left the middle finger has been amputated at metacarpal phalangeal joint. He has perfect function of elbow, wrist, and shoulder. There is slight impairment of function of the joints of the hand, but no ankylosis. It is my opinion that this man's hand will recover full function less the loss of the finger when proper exercise and use of the hand and arm are consistently attempted.

"(Signed) Floyd J. Bolend, M. D."

Dr. Clarence E. Lee, whose qualifications were admitted, at page 40, says:

"Q. Now, will you state just what condition you found the hand in? A. It is the result of his having a strained—strained joints, or in the use of the joints in the hand itself, of the fingers remaining; that is, power of limitation; the power of grasping, and he is incapacitated in the function of that hand. Q. Can you state about what per cent. he is incapacitated by the loss of the function? A. Considerably, not less than 50 per cent. Q. Does that appear to be a permanent injury to you in your opinion, from examination? A. I would think so, yes."

It developed in the progress of the evidence on the hearing that he was a left-handed man, and that he had been in the habit of climbing derricks, but by reason of the injury to his left hand, he was not able to grasp anything, and had to surrender his occupation. The report of the examination of another physician, Dr. Floyd J. Bolend, develops that he made an examination of the claimant about the 19th of September,

1925. Beginning at page 15, he gives his conclusions as follows:

"A. Conclusion was, functionally right arm is perfect; on the left hand the middle finger has been amputated at metacarpal phalangeal joint. Has perfect function of elbow, wrist and shoulder. Slight impairment of function of the joints of the hand but no ankylosis. In my opinion this man's hand will recover full function less the loss of the one finger when proper exercise and use of the hand and arm are consistently attempted. Q. Doctor, I believe you state impairment to the arm is confined almost entirely to the wrist, is that right? A. No, sir; to the hand below the wrist. Q. No impairment then of the wrist? A. No, sir. The function of the elbow, wrist, and shoulder is from the wrist downward— Q. Has he got full flexion of the index finger? A. No, sir; had not when I examined him. He had not full flexion of any of the fingers when I examined him. Q. How much loss of flexion in percentage of the index finger? A. At that time, if I remember—at the time, the amount of flexion he had, I would allow —would not exceed 15 per cent.—in any of the fingers. Q. Then he would only have 15 per cent. flexion in the three remaining fingers? A. Of the three remaining fingers. Q. Has he any loss of extension? A. No, sir; the fingers are extended—were in the extended position practically all time—that was the trouble— Q. Were the joints ankylosed? A. They were not. Q. Was loss of flexion due to loss of ligaments or tendons? A. Yes, sir; to the tendons and scar tissue of the hand. Q. Was it your opinion that it would reach full recovery of the flexion? A. Yes, sir; probably so, to proper use and treatment. Q. Doctor, have you just examined the patient's hand at this time? A. Yes, sir. Q. Wish you would state for the record, doctor, the condition you find of the remaining fingers at the present time. A. There is about 90 per cent. of voluntary flexion of the other two remaining digits— there is about 50 per cent. of voluntary flexion of the thumb and his corresponding finger, and is increased ability to extend in all remaining fingers of the hand. Q. Is there any impairment to the palm of the hand or back of the hand? A. There is scar tissue, adhered scars—of that which I spoke in my report, running down by the side of the finger that was amputated and finger next to it, toward the palm, and that one described extending down the palmar surface is adhered— Q. The loss of flexion, doctor, is that confined entirely to the one finger? A. No, sir. Q. It is divided up? A. Yes, sir; divided up practically equally among all the joints. Q. Doctor, if this man had been working most of the time for about one year, would you expect any improvement, from the condition it is now? A. Yes, sir; would expect a continuance of improvement. Q. Will it fully recover? A. I couldn't say for sure a full recovery, but somewhere

approximating it—in adult life you lose a member of the hand you are not going to get, under the best of circumstances, complete normality."

At page 20, he says:

"Q. In your opinion as a physician how much percentage loss of use of that hand has resulted from that injury to the palm of the hand? A. To the palm of the hand outside of all remaining inconvenience— that scar tissue, we have common injury to the entire hand, injury to the entire hand confined to the wrist down through the palm to the loss of flexion of the three remaining fingers, is, as I said before that disability not to exceed ten or 15 per cent. to the other two at the present time. There is no disability to the thumb at the present time."

Besides this, there was the testimony of the claimant himself, and his sister, all of which clearly showed, in my view of the matter, that there was not only at that time a partial disability to the entire hand, but that the final result of the injury, so far as the hand and arm were concerned, was largely problematical. However, so far as the review of the matter was concerned by this court, it was limited to questions of law and not questions of fact that were involved, and practically everything here was a question of fact.

The only brief that I can find was the brief of the claimant, and there was no brief filed on behalf of the winning party, according to the docket. The clear weight and the compelling weight was to the effect that there was a disability, resulting from the injury, at that time, though its future consequences no man could determine, unless he were vested with omniscience, a thing that few have the subjective symptoms of, and none the objective ones.

This court reaches the conclusion that, because under these conditions the former Commission refused to allow that which was clearly due at that time, leaving open what was to accrue, the present Commission could not correct the error when the results were fully developed. I do not think that the finding of the former Commission was, or could have been, that there can never be any disability arising from this injury. On the contrary, they found the injury, and the evidence was compelling, and, as it seems to me, they should have found an actual result, and a probable consequence, of permanent disability. Time went by, and a new order was made for the investigation, and notice given. However, on the modification of the order, and a substitution of a new one, as made by the first Commission, there does not appear in the record that any no-

tice whatever was given to the claimant of any intention to consider the making of a new award in the place of the old one.

On the second application to determine disability, a full hearing was had. Reliance is made in the opinion of the majority upon some testimony and answers given by the claimant, as found on page 4 of the opinion, as to the court's bringing out from the claimant the same identical, physical condition now as it was before. A quotation is made as follows:

"By the Court: Q. Now, Mr. Kincannon, was your hand in that condition at both of the hearings before the Commission? A. Yes, sir. Q. The fingers were stiff and ankylosed? A. Yes, sir. Q. And on these hearings was your hand exhibited as an exhibit before the Commission at the time of the hearing? A. Yes, sir. Q. And you had doctors to testify at that time? A. Yes, sir. Q. What doctors? A. Doctor Lee and Doctor Bolend."

And:

"Q. And you never received any money only for the loss of the second finger of your left hand? A. Yes, sir. Q. And you say your hand has stayed in that condition like it is now, ever since this alleged injury? A. Yes, sir."

However, the testimony of doctors before was that there was no "ankylosis." Part of the record in the other hearing showed, however, that there was "metastisis abscess of right elbow—severe," but the stenographer in copying it in this transcript has it "metastile abscess of right elbow—severe." One would have about the same right to call on the injured workman to distinguish between "metastisis" "metastile," and "metastasis," on pain of losing compensation, as to say because his answer was yes, as to the existence of "ankylosed" and stiffened fingers on the former hearing, therefore the "identities" required for "res adjudicata" exist.

I can see no reason why, if that condition in the right arm was brought about as a result of treatment of the injury to the left hand, that it should not be taken into account, though the Commission, at neither time, seems to have allowed anything for that. The order now appealed from did allow for permanent partial disability to the left hand, and figured the amount less that which had already been paid. This is gotten rid of here on the ground of "res adjudicata." However, it does not appear that the results of this injury, which are conceded, and found by both Commissions, could have been foreseen, or was foreseen, by the former Commission, and it appears to me that if it were a court, we could scarcely say that they were well advised as to what

was going to happen, as shown by the result of what has happened.

It is clear that there was a disability to the hand. It is further clear that anyone who would figure the infection that followed was bound to figure that time would fully develop the extent of the injury and its consequence, and that the doctors themselves did not claim that their prognosis of it was sure. However, this court undertakes to put its decision upon the words of the statute, and says that sections 7296, 7297, and 7325 must be construed together, and that when so construed the result is that the Commission could not modify any order except in one case, a change of physical condition. The word "only" is brought in, which is a matter that was never in the statute and was never intended to be, unless language is to be disregarded in its entirety.

Everybody knows that the Laborer's Compensation Law was enacted with the express design and purpose of getting around the troubles that beset an injured workman in getting something to go upon for rehabilitation purposes. We also know that court machinery was not well adapted to that, and that the Legislature expressly forbade courts to have anything to do with it, except that it allowed this court to review an award, but requires it to follow the decisions of the Commission on all questions of fact. This, of course. was largely a gesture for the purpose of preventing the act itself from being unconstitutional by reason of the fact that superintending control was vested by the Constitution in section 2 of article 7, in the following language:

"The original jurisdiction of the Supreme Court shall extend to a general supervising control over all inferior courts, and all commissions and boards created by law."

Outside of that one section, the Legislature undoubtedly sought to rid the laborer of the pitfalls of "res adjudicata." They recognized that the claimant's hurts would be witnessed by those who were still working for a common employer, and that frequently there would be difficulty in getting witnesses before the Commission. They further required that the original act, which is now a part of C. O. S. 1921, beginning with section 7282, and ending with section 7337, was liable to be attacked for the lack of court procedure, and so in section 7336 it was provided as follows:

"7336. Validity of sections declared independent. If any section or provision of this act be decided by the courts to be unconstitutional or invalid, the same shall not affect the validity of this act as a whole

or any part thereof other than the part so decided to be unconstitutional or invalid."

In section 7337, it was provided as follows:

"7337. Pending actions and actions for death. This act shall not affect any action pending or cause of actions existing or which has, or may hereafter accrue, to the dependents or other legal representatives of an injured employee in case death results from the injury after he has been awarded compensation under the provisions of this act; provided, that for any injury for which compensation is not provided under the provisions of this act, the injured party shall have the right of action in the courts for his damage on account of such injury."

In section 7286, court procedure was practically forbidden, except where compensation had not been secured for the injured employee. The court evidently relies upon section 7296 as a foundation for its decision, independent of section 7325, though it says it construed them all together. However, section 7296 pluralized the word "condition" and makes it "conditions." This decision practically makes it "change in physical condition." That section is very broad, and fixes it so that on any change of condition, whether physical or otherwise, the Commission of its own motion can review any award, and it could review any award on application of any party in interest, and could make an award ending, diminishing, or increasing the Commission's previous awards.

There is a further provision that any change in the award should not affect any money already paid. Nothing could be clearer than this, if it stood alone. It most clearly confers upon the Commission, upon its own motion or anybody's motion, that when there is a change in condition of any kind, power to modify it. Those conditions are in no wise described. They are all.

Everybody recognizes that the hearings had before the Commission are not court hearings. That very frequently parties cannot get the witnesses, and the Commission itself was only empowered to issue subpoenas for witnesses, as is clearly shown by article 4 of the act, section 7320 found therein, and was denied power to punish for disobedience, its power being especially confined to issuing the subpoena, and the power to enforce obedience thereto is, in section 7321, not granted to the Commission, but is put into the hands of the county judge of the county in which the witness resides, and also in which the hearing is being conducted.

Taking the doctrine of construing the act

all together, as announced in this court, and looking a little further, one will find that section 7297 was evidently enacted for the purpose of serving as a foundation for sections 7298, 7299, and 7300. As originally made, it is provided that unless an appeal was had within 10 days, the amount fixed by the Commission was a liquidated claim against the employer or insurance carrier, which with an added penalty of 50 per cent. could be recovered in an action instituted by the Commission in the name of the people of the state. The Commission was empowered by that section to compute the whole amount of the award, and to recover the computed amount, and an addition of 50 per cent. Power was conferred upon the Commission to compromise, and the Commission was to disburse the benefits in accordance with the award, and the penalty was to go to the state. The amended section, page 126, Session Laws 1923, is as follows:

"Section 7300. If payment of compensation or an installment thereof due under the terms of an award, except in cases of appeals from an award, be not made within ten days after the same is due by the employer or insurance carrier liable therefor, the Commission may order a certified copy of the award to be filed in the office of the court clerk of any county, which award whether accumulative or lump sum shall be entered on the judgment docket of the district court, and shall have the same force and be subject to the same law as judgments of the district court. Upon the filing of such certified copy of the Commission's award. a writ of execution shall issue and such process shall be executed and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by the Code of Civil Procedure. If any insurance carrier intentionally, knowingly, or willfully violates any of the provisions of this Act, the Insurance Commissioner on the request of the Commission, shall suspend or revoke the license or authority of such insurance carrier to do a compensation business in this state."

Nowhere in this section is there an indication that the Commission was empowered to make an award, and thereby give it the attributes of a judgment of a court. This court, as it appears to me, has in some of its decisions hit upon a formula called "res adjudicata," and in its application to the work of an administrative board, as most clearly defined, has carried on a species of worship amounting almost to that of a fetish. By reference to these sections, it will appear that section 7297 meant what it said; and provided that the action of the Commission in making an award should bind the claimant and should bind also the carrier, and that such would be the rule when the award or decision of the Commission should be certified to the district court.

It is further evident that the Commission itself is not embraced in the expression "between the parties," because provision in that very section is made for making it a party in the Supreme Court. It is further evident that questions of fact were not permitted to be passed on by the Supreme Court. and that the draftsman of this Laborer's Compensation Law was studiously avoiding the permitting of this court to guide the action of the Commission in its findings on questions of fact. As applied to the present case, the ordinary requirements of a plea of "res adjudicata" will not fit. But when one reflects that the treatment of injured workmen had been such, prior to the passage of the law, that it was necessary to change the procedure from that of court procedure to that of an administrative board, and to change the status of the workman to that of one who was not sui juris, occupying the status of a minor, who could do nothing without the Commission said so, the doctrine announced in a recent case that there can be no "res adjudicata" in a habeas corpus case when the welfare of a minor is concerned, with equal force, would apply to a case of this kind. Of course, the district court, when called upon to carry out the award, unless it is changed by the Industrial Commission, would have to lend its process to the carrying out of the same, and could not question its validity. But that is quite apart from holding that the Commission itself could not modify it. The language of the condition section covers all conditions, whether the condition arises from the discovery of new evidence. or perjury in former hearings, or mistake. or a great many other conditions that might be thought of in this connection.

As applied to the present case, however, the former Commission, under section 7325, corrected its mistake, as there was no change in physical condition. It will be observed that the language of section 7297 limits the award or decision to questions within the jurisdiction of the Commission. Section 7296, on the subject of review of awards, gives the Commission, on its own motion, power, on a "change in conditions" to review any award and make a new one in practical effect. and it is especially provided that this review shall not affect any money already paid. Clearly, the Legislature was tired of courts, and court procedure in dealing with these matters, with its technicalities built up as a result of a long series of years of domination. Evidently, the Legislature knew that, under court procedure,

the probable consequences of an injury would have to be estimated at a trial under the doctrine of "res adjudicata," requiring every defense and every cause of action to be brought forward in the first instance, no matter whether the party had a hearing or not, and very frequently without the other side being there. However, when one reflects that the Legislature was afraid of the court declaring some section unconstitutional, and providing so that the balance of the act should stand, it was a clear expression to the courts of "hands off, if you please."

When one takes into account the change that was made in section 7325 in 1923, which for the first time conferred upon the Commission power to make a final award by using the words "shall acquire jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition," no species of legal reasoning can get away from language so plain. It just has to ignore it. When, by virtue of that act, for the first time the Legislature saw fit to authorize and empower the Commission to have a full hearing on the petition, and also to "take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require," it is convincing that it was in the mind of the Legislature that theretofore the Commission's findings were not conclusive on it, and could not be. When one reads a little further, it says that the Legislature then conferred upon the Commission the power to consider the petition for a final settlement, and to dismiss the same without a hearing, if in its judgment the same should not be set for hearing, it is conclusive that the Legislature thought that it was entrusting to the Commission full authority for the first time to settle the matter by its action, as it was final. We go a little further and find this:

"If the Commission decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly and the Commission may make an award that shall be final as to the rights of all parties to said petition, and thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same."

The Legislature most unequivocally announced that. independent of this section, the Commission did not have such jurisdiction. However, as applied to this case, the majority opinion holds that without such

procedure, and on a partial hearing, wherein the bulk of the evidence was disregarded, the same results could be accomplished by calling it "res adjudicata." When one takes the next sentence, as follows:

"If the Commission shall decide the case should not be finally settled at the time of the hearing, the petition shall be dismissed without prejudice to either party, and the Commission shall have the same jurisdiction over the matter as if said petition had not been filed,"

—it appears that language could not be made plainer. The same fear of court procedure, however, and the same fear of the requirements of the Constitution, about giving this court power of review on questions of law, is exemplified in the next sentence as follows:

"The same rights of appeal shall exist from the decision rendered under such petition as is provided for appeals in other cases before the Commission; provided, there shall be no appeal allowed from an order of the Commission dismissing such petition as provided in this section."

To say that the Legislature intended that when the insurance company was successful in getting a finding that, though the party was injured in an employment under the Laborer's Compensation Law, that on the doctrine of "res adjudicata," when new consequences not foreseen developed, the Commission could not allow compensation, is to affirm that which cannot legally be affirmed. The force of precedent, however, has been used to such an extent, in this and some other cases, that the majority is, as surely bound as Gulliver, in the thread advertisement, was tied down by the Lilliputians, or the bug that is caught in the web of a spider.

The cases on which the present case is founded are two, though it was the same actors in each and the same facts. Reference is made to Ward v. Beatrice Creamery Co. There are two reports of it, one of which is reported in 104 Okla. 91, 230 P. 872. The decision here must rest for its foundation on the Ward v. Beatrice Creamery Co. decision, as it certainly does not rest on the statute. There are two of those reports, though it all arose out of one transaction. Ward was an employee of the Beatrice Creamery Company, which was engaged in handling cream. It used a soda ash for the purpose of sweetening the cream. The employee found himself very badly hurt as a result of it, claiming lack of knowledge of its effect on the human system. If the record in the case can be relied upon, it was a case that at common law would have

resulted in a verdict against the Creamery Company. However, the Workmen's Compensation Law was in force when the injury occurred. The claimant applied to the Industrial Commission. They disclaimed jurisdiction. He then went into the district court of Oklahoma county. The court very properly held that the jurisdiction to entertain the case was in the Industrial Commission, and that by virtue of the Workmen's Compensation Law, it had no authority to investigate the case. From a ruling to that effect, proceeding in error was brought to this court, and this court held, in the case of Ward v. Beatrice Creamery Co., above, that the jurisdiction was not in the district court, but was in the Industrial Commission to hear his case. He then went back to the Industrial Commission. They set aside their former order denying jurisdiction, and held that his trouble was an occupational disease, and denied compensation. Ward, the claimant, brought proceedings in this court to review, and this court held (Ward v. Beatrice Creamery Co., 117 Okla. 31, 245 P. 570) that the man could have no recovery, basing its right so to do on the doctrine of "res adjudicata" arising out of the decision of the Industrial Commission that it had no jurisdiction in the first instance. A most deserving claimant in this way lost the benefit of the Workman's Compensation Law under the doctrine of "res adjudicata," though its constituent elements were wanting.

In that case, as in the present case, the court seems to have gone off on the 30 days provision about appeals. If it held anything in the Beatrice Creamery Co. Case, it held that the mistake of the Commission denying jurisdiction could not be corrected by a later order holding jurisdiction, and made pursuant to the suggestions of this court in a case that this court practically conceded was a deserving one, and which it held belonged before the Commission. As pointed out above, in the present case, the claimant went to the Supreme Court, though he went from the substituted order, notice of which, before it was made, appears not to have been given to him, and the case was dismissed because he had not appealed within 30 days from the date of the original order.

I am not able to see the justice of the position assumed in the particular case by the court, neither can I see, under the statutes and under the decisions cited, a reason for the position that "res adjudicata" applies in this case. I, therefore, register this dissent.